[Civ. No. 4093. Second Appellate District, Division Two.—April 27, 1923.]

## ROBERT BRYDEN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — HOLD-UP OF WATCHMAN — PERSONAL ASSAULT—RIGHT TO COMPENSATION.—Under the Workmen's Compensation Act, an injury suffered by an employee in a hold-up while guarding his employer's property did not arise out of his employment, where the criminals were after the contents of the employee's pockets, nothing more, and when they had taken what he had they decamped.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission.   Award affirmed.

The facts are stated in the opinion of the court.

Olin Wellborn and Stephen Monteleone for Petitioner.

A. E. Graupner for Respondents.

WORKS, J.—Petitioner was an employee of respondent Pan-American Petroleum Company and suffered certain injuries during the period of his employment.   Because of these injuries he presented to respondent Industrial Accident Commission his application for compensation under the provisions of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831).   After due hearing the commission made its order or award that petitioner take nothing by reason of his claim.   Petitioner applied for a rehearing before the commission, and, his application being denied, he filed his petition in this court for a writ of review. The writ issued and to it respondents have made return.

The facts upon which our inquiry is to be based, taking them from the testimony of petitioner himself, are as follows: Respondent Petroleum Company operated a certain property, consisting of several pumping plants, for the production of oil.   Petitioner was employed at one of the

1. Assault as injury within purview of Workmen's Compensation Act, notes, Ann. Cas. 1915A, 126; Ann. Cas. 1918B, 768; 15 A. L. R. 589; 21 A. L. R. 760.

pumping plants, his rating or position being that of fireman. He was in charge of this particular pumping plant during one shift in each twenty-four hours, his period of duty being from 4 P. M. to 12 midnight. Other men had charge of the plant on shifts covering the remainder of each day. In the discharge of his duty, or, rather, in awaiting the necessity for a performance of it, petitioner sat on a bench in a small box-like structure known as the "dog-house," provided by the employer. Petitioner made the following statements in his testimony: "I was watching boilers, watching a flowing well and pumps. I was hired to watch these boilers and flowing wells and look out for everything around there such as tools and to order anybody off the property that came around there that was not working there. . . . These boilers were to make steam for the pumps and for rotary drilling, but they were not drilling at this time. . . . Q. How far were you from any of the other buildings of the company? A. I should think about half a mile. Q. You say that in addition to watching the plant and the flowing well you also had to watch and guard tools and implements? . . . A. Yes, the men that were working around there putting in pipe-lines would bring their tools up to the dog-house and I would watch them. Q. They would turn them over to you and you would watch them to see that they were not taken away maliciously? A. Yes. . . . Q. Were you the only employee of the company engaged in guarding the company property at this place? A. . . . Yes. . . . Q. Did you have firearms in this dog-house? A. No, sir." Petitioner was injured at night at the dog-house mentioned in his testimony. The structure was by the side of a well-traveled road. Petitioner testified as follows: "I was sitting in this little dog-house and two shots were fired, one hitting in my arm and the other in the side and through the kidney. After they were fired I looked up and saw two men with masks on standing there. I stood up and held up my hands and they came in and looked through my pockets and took what money I had and left. . . . Q. These men that appeared in front of this dog-house and commanded you to hold up your hands, were they masked? A. Yes. Q. Did they take anything other than the twenty dollars and some odd cents that you had on your person? A. No."

[1]   It is contended by respondents that the injuries of petitioner did not arise out of his employment under respondent Petroleum Company, and this is the theory upon which respondent Accident Commission made its award. The award must, of course, stand if there is in the record any substantial evidence which supports the findings upon which it is based.   We think such evidence is found in the testimony of petitioner which is above quoted.   Under that evidence petitioner's case is not like those of watchmen who are injured in endeavoring to protect the money or other property of persons who employ them to watch such money or property and to protect it from theft.   It is evident from the facts that the assault upon petitioner was purely personal to him and was not engendered because of any desire upon the part of the marauders to molest the property of petitioner's employer.   The assault was but an ordinary case of hold-up and, so far as the liability of the employer to make compensation is concerned, might as well have occurred on the road near the dog-house, or out in the open country, or on the streets of the nearest city.   The criminals were after the contents of petitioner's pockets, nothing more, and when they had taken what he had they decamped.   Petitioner was not entitled to compensation. No cases are cited to us like the present, but our views receive a general support from *Schmoll* v. *Weisbrod & Hess Brewing Co.,* 89 N. J. L. 150 [97 Atl. 723], and *State* v. *District Court,* 140 Minn. 470 [15 A. L. R. 579, 168 N. W. 555].

Award affirmed.

Finlayson, P. J., and Craig, J., concurred.