(123 So. 225)

## DEAN v. STOCKHAM PIPE & FITTINGS CO.
### (6 Div. 354.)

Supreme Court of Alabama. June 6, 1929.

Rehearing Denied June 27, 1929.

London, Yancey & Brower, and Whit Windham, all of Birmingham, for appellant.

Nesbit & Sadler and Grady W. Patterson, all of Birmingham, for appellee.

BOULDIN, J. This is a workmen's compensation case. The trial judge, with commendable care, made a full statement of the facts, his conclusions thereon, and his views of the law applicable thereto. The following excerpts bring to view the questions we are to consider:

"The deceased, J. J. Dean, was a night watchman at the plant of defendant. He was killed by an unknown person on the night of October 5, 1928, at about 8:30 o'clock while he was on duty and making his rounds of the plant. * * *

"In this state of the evidence the question presented is: Is the accident compensable as one 'arising out of and in the course of his employment,' or it is an injury (as specified in section 36(j) of the Workmen's Compensa-tion Act) 'caused by the act of a third person or fellow employee, intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment'?
* * *

"Was the murderer's motive theft or injury to the employer's property, or merely to rob the watchman? In other words, was the injury to the watchman to him as an employee and because of his employment, or was it personal to him, for the mere purpose of robbing him? * * *

"The court is of opinion that the circumstances furnished the occasion for the robbery, and, but for the employment and the nightly rounds of the watchman, the opportunity would not have been presented, but that the purpose sought to be effected by the murderer was robbery—something personal to the deceased—and not an act directed against him because of his employment.

"At all events, in order to be compensable, the petitioner must reasonably sustain the burden of proof by showing that the accident arose out of and in the course of the employment, and deceased was injured as an employee and because of his employment, and this has not been done, but left entirely to conjecture, with the weight of the probabilities rather militating against petitioner's contention. The burden of proof is no different under the Workmen's Compensation Act. Ex parte Coleman, 211 Ala. 248, 100 So. 114."

Petitioner complains that the court below misplaced the burden of proof; that subdivision (j), § 7596, of the Code, is in the nature of an exception, and the burden is on respondent to bring itself within the terms of the exception. Subdivision (j) is rather by way of further definition of "accidents arising out of and in the course of employment," and the burden to prove such case is on the plaintiff. Ex parte Coleman, 211 Ala. 248, 100 So. 114, Sloss-Sheffield Steel & Iron Co. v. Harris, 218 Ala. 130, 117 So. 755.

A bill of exceptions brings up the entire evidence. As well settled, this court can look to it for two purposes: (1) Is there any evidence to support the conclusions of fact found by the trial court? If so, this court will not consider the weight of the evidence. (2) Is the finding of facts omissive, showing a mistake of law as to the controlling questions in the case?

In this case the conclusion that the motive of the murder was robbery of the deceased employee is well supported by the evidence. The evidence is circumstantial. Most of it is set out in substance and effect in the findings of fact.

The question of moment in the case is whether, taking the findings as a whole, an error of law appears? As we read these

findings, the trial court took the view that, if the sole motive of the murder was robbery of the watchman of his personal belongings, this was an end of the inquiry; that intent to injure the employer or his property, or other motive directed to the victim as an employee, must appear.

The evidence clearly suggests the following inquiries: Did the would-be robber see the watchman draw his pay that same evening, or see him waving it during the friendly banter between him and Mr. Walters, or otherwise know or believe he had money on his person? Did the robber also know Mr. Dean was a night watchman, know his fixed round, know that he could secrete himself in the shadows and effect his purpose with little hazard to himself, and did this incite the murder?

In brief, did the fact and nature of the employment, not only furnish the opportunity, but suggest the opportunity? Did the employment mark the deceased as the special victim of the robbery? Was he murdered because he was Mr. Dean, or because he was a night watchman, an easy mark, because of the conditions of his employment? If so, was there a causal connection between the employment and the murder, within the meaning of our Workmen's Compensation Law? Was this a hazard of industry for which the industry should bear its part of the loss to dependents? This inquiry is not without difficulty. The authorities do not appear to be in harmony.

This court has had occasion to consider subdivision (j), supra, in the following cases: Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188; Ex parte Coleman, 211 Ala. 248, 100 So. 114; Ex parte Terry, 211 Ala. 418, 100 So. 768; Martin v. Sloss-Sheffield S. & I. Co., 216 Ala. 500, 113 So. 578; Sloss-Sheffield Steel & Iron Co. v. Harris, 218 Ala. 130, 117 So. 755. Neither of these was a night watchman case. These decisions, however, state certain controlling principles. Among them these: In view of its broad legislative purpose a willful assault upon the employee may be an accident within the meaning of the Compensation Law.

Subdivision (j) is but the logical definition of "arising out of the employment" in that class of cases, as construed in states having no subdivision (j). We have written into our law the words of the Madden Case, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000, to wit: "The rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment, and not by some other agency." Also the following (Garrett v. Gadsden Cooperage Co., 209 Ala. 225, 96 So. 190): "In Hinchuk v. Swift & Co., 149 Minn. 1, 182 N. W. 622, it is said that the principle applicable to cases like that at bar is that the injury is included within the statute if there is some causal rela-

tion between the employment and the injury; the court adding: 'Not that the injury must be one which ought to have been foreseen, but it must be one which, after the event, may be seen to have had its origin in the nature of the employment.' "

Among cases bearing some analogy to this is Common School Dist. v. District Court, 140 Minn. 470, 168 N. W. 555, 15 A. L. R. 579. This case involved an assault to ravish, perpetrated upon a young school-teacher soon after she left the school grounds for her boarding house, and while passing through a lonely wood. Held no compensation. The opinion reviews and cites many cases. The decision expressly holds the court need not inquire what their view would be but for subdivision (j) peculiar to that and a few other states, and so plants the decision on that subdivision. As above noted this court has departed from the view that subdivision (j) changes the meaning of the general clause "arising out of the employment."

Moreover, from the facts of that case, as stated by the court, it does not appear the ravisher knew the young woman of necessity went alone through an isolated wood, and that this exposure incident to her employment furnished and suggested to the ravisher his opportunity, and so had a causal connection with the assault. That case recognizes the rule that, "when the employee is exposed to an assault by the character of his work, * * * so that it is a hazard or special risk of the work, the cases say that it arises out of the employment."

Taking subdivision (j) on its face, a willful assault, intended to injure the employee, is still compensable in two alternatives: When "directed against him as an employee," or "because of his employment." If the hazard peculiar to the employment is a contributing cause, it matters not whether violence was directed to him as an employee. "Although unforeseen, and the consequence of what, on this record, appears to have been a crime of the highest magnitude, yet now, after the event, it appears to have had its origin in a hazard connected with the employment, and to have flowed from that source as a rational consequence." 94 Conn. 382, 109 A. 130, 13 A. L. R. 511; Reithel's Case, 222 Mass. 163, 109 N. E. 951, L. R. A. 1916A, 304; Munro v. Williams, 94 Conn. 377, 109 A. 129, 13 A. L. R. 508.

A full note on the subject follows City of Chicago v. Industrial Commission (292 Ill. 406, 127 N. E. 49) 15 A. L. R. 588. Special note reviewing night watchman cases appears in 6 A. L. R. 578, supplemented by note in 13 A. L. R. 512. One case practically on all fours with this is Walther v. American Paper Co., 89 N. J. Law, 732, 99 A. 263. Without discussion of the governing principles, this decision by a divided court held no compensation allowable, on the authority of Hul-

ley v. Moosbrugger, 88 N. J. Law, 161, 95 A. 1007, L. R. A. 1916C, 1203.

The Hulley Case involved an injury from horseplay or skylarking among employees. The decision was in keeping with the current of authority in that class of cases. See note to Hollenbach Co. v. Hollenbach, 13 A. L. R. 540. The decision in the Hulley Case is of value here in its approval of the rule announced in McNicol's Case, 215 Mass. 497, 102 N. E. 679, L. R. A. 1916A, 306, as follows:

"It 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. ·But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Another case of assault to rob a night watchman is Bryden v. Ind. Acc. Com., 62 Cal. App. 3, 215 P. 1035. No compensation allowed. An interesting case, quite analogous to this, is Heidemann v. American Dist. Teleg. Co., 230 N. Y. 305, 130 N. E. 302. It involved a patrolman employed by a company furnishing burglary and watchman service. While on duty he was hit by a bullet fired by officers pursuing a burglar. Said the court:

"Heidemann's duties involved exposure to something more than the ordinary perils of the street, with its collisions, its pitfalls, and the like. * * * For him, in a measure not common to the public generally, there was exposure to the perils that come from contact with the criminal and lawless. Other men, if the ill fortune was theirs to be close to an affray, might, indeed, encounter a like fate. * * * His calling multiplied the chance that he would be near when trouble came, and, in multiplying the chance, increased exposure to the risk. 'He was brought by the conditions of his work "within the zone of special danger."' * * * We are told that the death was unrelated to the employment because the burglars had not entered a building which the employer was protecting. The incidents of service may not be limited so narrowly. It was not only in repelling attack· upon the property of his employer's patrons ·that Heidemann had to face the perils of his calling. He faced them at all times while abroad upon his duties. His employment put him upon the street at night, and put him there in search of trouble. If shots were heard, or cries of distress, or the sounds of an affray, others might run to shelter. His duty was to search the cause. The disturbance might have its origin in the homes and stores and offices intrusted to his care. He could not know unless he looked. Crimes of violence flourish under cover of the night and darkness. That was the very reason why Heidemann was there to guard. The sudden brawl, the 'chance medley,' * * * are dangers of the streets, confronting with steady menace the men who watch while others sleep. Casual and irregular is the risk of the belated traveler, hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek where others were free to shun. The difference is no less real because a difference of degree. The tourist on his first voyage may go down with the ship if evil winds arise. None the less, in measuring his risk, we do not class him with the sailor, for whom the sea becomes a home. The night, too, has its own hazards, for watchman and for wayfarer. Death came to Heidemann in the performance of his duty, face to face with a peril to which the summons of that duty called him."

The latest case we have found is Lanni et al. v. Amsterdam Bldg. Co. et al., 217 ·App. Div. 278, 216 N. Y. S. 763. In every detail it is like the case here. The night watchman had received his pay at 5 o'clock in the afternoon, gone on 'duty, and found dead next morning with signs of violence on the body, and on premises where he was watchman. Said the New York court:

"The motive seems to have been robbery; he did not have his wages or other money on his person when he was found in the morning. A person who would be tempted to rob him would be some one who knew he had been paid his wages and probably had them on his person. We think the injury arose out of his employment, which involved the receiving of wages and the consequent increase of risk of robbery; his employment placed him alone on the premises with his wages in his pocket, thus furnishing an opportunity for robbery without interference— a risk beyond the common risk. Rosmuth v. American Radiator Co., 201 App. Div. 207, 193 N. Y. S. 769."

We concur in the views so expressed. The trial court was in error in his views of the law. The judgment is reversed and vacated,

and the cause remanded for retrial on the principles herein announced.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

### On Rehearing.

PER CURIAM. On consideration by the full court, the opinion is so modified as to remand the cause, with direction to enter judgment for plaintiff in keeping with this opinion.

All the Justices concur.