# January-Wood Company v. Schumacher et al.

(Decided November 26, 1929.)

WORTHINGTON, BROWNING & REED and BLAKEY, DAVIS & LEWIS for appellant.

ALLAN D. COLE for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Ben Schumacher was sole night watchman at the cotton mill of the appellant, January-Wood Company, in

Maysville. Their employment relation was controlled by the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987). Some time about 1 o'clock in the morning of December 9, 1919, Schumacher was shot and killed by Henry L. Eddings while in the course of his duty he was making the rounds in a remote part of the building. The evidence conclusively shows that there had been intimate relations existing between Eddings and Schumacher's wife, and the facts disclosed are, in brief, that Eddings came from Lexington early in the night, climbed the fire escape to the third floor of the building, and thence went to the fourth floor, where he met the deceased, killed him, and then returned to Lexington the same night. He had until recently boarded in Schumacher's home, and at one time had been employed by the appellant company. He confessed the crime, but said he heard Schumacher had been threatening him and that he came to the mill to see and "to make peace with him," but when he met Schumacher at the place indicated the latter cursed him and threatened to kill him, whereupon he fired in self-defense, firing the second shot after Schumacher had fallen. Eddings was sent to the penitentiary for life for the crime. There was ample, competent evidence heard by the board (ignoring that which appellant claims was incompetent) to establish, as the court declared, "with reasonable certainty that Henry L. Eddings, in malice personal to decedent, Schumacher, shot and killed him."

Upon application by Schumacher's widow and children for compensation under the provisions of the Workmen's Compensation Act, the board refused to make an award. On appeal the circuit court reviewed that decision and directed the case be remanded with directions to the board to award such sums as are provided by the statute. This appeal is from that judgment.

The act, section 4880 of the Statutes, affects liability of the employer coming within its terms "for personal injuries sustained by the employee by accident *arising out of and in the course of his employment,* or for death resulting from such accidental injury." It is conceded by the company that under the authorities construing the term its employee met death from injury sustained while in the course of his employment, but is strenuously and ably argued that it was not the result of injuries "arising out of" his employment. It is commonly held that this term has a meaning different from that of "in the course of his employment." A double condition is im-

posed. 28 R. C. L. 801. The latter phrase refers to time, place, and circumstances, while the former relates to the cause or origin of the accident. Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524. The board held it was "unable to find that decedent's death arose out of his employment." Its decision is one of law and not of fact, hence the rule that the award will be sustained if there is any evidence to support it does not apply. The court therefore reviews the decision as a finding of law. Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467; Wilson Berger Coal Co. v. Brown, 223 Ky. 183, 3 S. W. (2d) 199.

The circuit court was of the opinion that Schumacher's death did arise out of his employment, predicating his conclusion upon the fact that the nature of his place of duty, to-wit, its isolation and its darkened condition, with the fire escape providing a means of entrance and concealment by the one who killed him—in other words, the exposure to danger—created an environment inviting the attack and nerving the assailant to do his deed, thereby contributing to bring about his death. Further reasons are thus given in the court's opinion: "Reviewing the proof in the record, it would appear that the malice of Eddings towards Schumacher had existed for a long time before the killing and, from the proximity of the parties, that he had abundant opportunity to have attacked Schumacher at other times and places, but this he did not do, but deliberately selected the place where he knew that Schumacher's duties as night watchman called him at the midnight hour as a place of ambush, where he could kill Schumacher with no eyewitnesses to the deed, and escape detection. Private malice was the exciting cause of the killing of Schumacher. But the environment of Schumacher in pursuing his duties as night watchman was a contributing cause, the inviting and precipitating cause. All this appears beyond controversy on the face of the record. The causal relation between the opportunity which the nature of Schumacher's duties as night watchman afforded his assassin for the commission of the crime, and the commission of the crime itself is manifest."

The court also considered the fact that compensation statutes of the various states—all modeled on the English statute—are very similar, and that in some of them there is specific provision against liability for assault

committed in malice personal to the injured party, while the Kentucky act omits such proviso; the inference being, according to the reasoning of the court, that such provision was purposely omitted from our act. Strengthening that inference is the fact that section 4890 recognizes that there may be compensable injuries though inflicted by a third party. Coupled with these deductions, said the court, is the statutory mandate of a liberal construction.

The ultimate determination of the case depends upon the interpretation and application of the clause "arising out of his employment." While the compensation acts of the several states are quite similar, there is a hopeless confusion among the judicial decisions respecting the meaning of this term. Some of these opinions are undoubtedly affected by conditions in the acts being interpreted which do not appear in the Kentucky act. So too, of course, are those decisions based upon various and divergent facts. Undoubtedly also they are influenced by the tendency of some courts to regard compensation acts as a species of general social insurance, and of others to regard them as but the extension of the doctrine of negligence as developed in the old law of master and servant. It seems to us the correct conception lies between these extremes. Cf. Phil Hollenbach v. Hollenbach, supra.

Many courts agree with the Massachusetts Supreme Court in its construction as thus expressed in the leading case of In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306: "It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment."

The fundamental principle of liability, it seems to us, is that the injury sustained was such as in the light of experience might reasonably have been foreseen as a result of the service and nature of duties performed (28

R. C. L. 786, 805), or the cause must have had its origin
in a risk connected with the employment and the injury
have flowed from that source as a rational consequence.
In re McNicol, supra. In Palmer v. Main, 209 Ky. 226,
272 S. W. 736, 738, the court thus generally stated the
rule: "We have therefore reached the conclusion that
an accident arises out of the employment within the
meaning of the Workmen's Compensation Act if it was
the direct and natural result of a risk reasonably inci-
dent to the employment in which the injured person was
engaged, and many courts take the same view of the
question."

The difficulty is usually encountered in determining
whether the facts of a particular case bring it within the
definition. Of course, where a night watchman sus-
tained injuries or death in protecting the property he was
guarding, even though as an incident his individual
rights are violated—as where a burglar entered to molest
or did molest the employer's property and also robbed
or otherwise molested the employee individually—it is
held that the injury arose out of his employment. There
is another line of cases (with conflicting conclusions)
more closely related to the case at bar and which to a
degree are based on the theory that the *locus delicti* was
a contributing factor. In some of these awards have
been made for injuries suffered by an employee assaulted
by a former employee discharged through his intrument-
ality, and by fellow employees in quarrels over tools or
arising out of the work in hand. The rationale of those
cases is that the employment brought the parties to-
gether. Other allowances have been approved by the
courts where, for illustration, the employee was as-
saulted by a fellow employee who was of a quarrelsome
disposition and known so to be by the master. This line
of cases is rested on the theory that the employer had
reason to anticipate that injury would result if the two
men continued to work together. In this class also may
be placed those cases allowing compensation for injuries
resulting from "horseplay" by fellow employees, some
of which are predicated on the sufferance of such con-
duct by the employer, and others on the fact that the one
injured was an innocent victim. But we have held in one
case that there should be no award for such injuries, as
will be presently shown. There is yet another line of
cases cited in the opinion of the trial court and relied on
by appellee. These are aptly classified as the "zone of

danger'' cases, illustrative of which are where watchmen, draymen, messengers, collectors, and the like, whose duties require their presence at a particular place —for example, in the street—sustained injury by reason of being at the place at the time. Even within the class there is a conflict of authority, as is shown in the review of cases in Palmer v. Main, supra, in which the court held under the facts dependents were entitled to compesation on account of the death of an employee struck by an automobile of another while on an errand for his master.

In Heidemann v. American District Tel. Co., 230 N. Y. 305, 130 N. E. 302, compensation to dependents was approved where a night watchman patroling the streets was struck by a bullet shot by a policeman pursuing a burglar, having no relation to the employee's work. Out of harmony with this latter opinion is Bryden v. Industrial Accident Commission, 62 Cal. App. 3, 215 P. 1035, where a fireman at an industrial plant was in a small structure, known as the ''dog house,'' provided by the employer by the side of a highway, while in the discharge of his duty or waiting the need for their performance, was assaulted and robbed by masked robbers. Compensation was disallowed on the theory that such assault might as well have been committed in the open country or the streets of the city, and the perpetration of the crime had no causal relation to his employment.

The Palmer case and those of like character are to be distinguished from this one, for the presence of the employee at the place of the accident or attack was the direct cause of the injury and he was not personally picked out as the object of assault for private reasons. In other words, the personal equation had nothing whatever to do with the assault. There was no personal animosity motivating the act. It was because of the employee's agency or the hazard incident to his duty and the *locus in quo* that necessarily exposed him to injury. He was where he was required to be and would not have been injured but for his presence there.

In the instant case the personal animosity of Eddings was the direct cause of the employee's death. He did not kill Shumacher because he was the company's night watchman on duty, but because he was the husband of his paramour. Does the fact that his duty put him in such place as gave his murderer an opportunity to carry out his nefarious design with less probability of apprehension than if he did so elsewhere constitute such

causal relation as to bring the result within the term "arising out of his employment"? We hardly think so, on both reason and authority.

The Compensation Act does not afford compensation for injuries or misfortunes which are merely contemporaneous or coincident with the employment or collateral to it. There must be a direct causal connection between the employment and the injury. That is an essential connecting link to the operation of the act. It is absent in this case. Schumacher's death cannot be traced to any cause set in motion by his employment. We cannot reason from the sequel to the cause. The fact that he was on the company's premises at work when killed by Eddings for reasons wholly unconnected with his employment and entirely unassociated with the relation existing between his employer and himself does not seem to this court sufficient to justify an award of compensation, which is in effect but holding the company responsible in a degree for his murder.

When we come to examine the authorities, as indicated, there is a maze of confusion in the application of the principles involved.

The reader is referred to the annotations in 6 A. L. R. 587; State ex rel. Common School v. District Court, 140 Minn. 470, 168 N. W. 555, 15 A. L. R. 579; and City of Chicago v. Industrial Commission, 292 Ill. 406, 127 N. E. 49, 15 A. L. R. 586, for cases of a more or less similar nature. A distinguishing feature in each of the cases referred to may be discerned and they all may be differentiated from the instant one. It will be observed, however, as stated in a note in 15 A. L. R. p. 594, that the courts generally hold if the assault of an employee was committed by another employee solely to gratify a personal ill will, anger, or hatred, the injury did not arise out of the employment within the meaning of the statute. The same must be true where the assault is by a stranger to the employment.

In Walther v. American Paper Co., 89 N. J. Law, 732, 99 A. 263, it was held that a night watchman in a mill who, while making his rounds, was struck over the head and killed by an employee of the same company, who had entered the mill and hid himself, without any intent to rob the office of the mill or to do any other mischief or crime except to rob the deceased whom he knew had been paid off that day, was not killed from an acci-

712

dent arising out of his employment. That decision is based upon Hulley v. Moosbruger, 88 N. J. Law, 161, 95 A. 1007, L. R. A. 1916C, 1203, which is a "horseplay" case, applying the principles of the Massachusetts case of In re McNicol, supra.

There are two domestic cases in which the application of the principles herein suggested resulted in a denial of compensation.

In Hazelwood v. Standard Sanitary Manufacturing Co., 208 Ky. 618, 271 S. W. 687, 688, (which is the "horseplay" case referred to in the early part of the opinion), it was held that the company was not liable for compensation under the act because the accident could not be said to have arisen out of the employment, for, said the court: "There is absolutely no relation between the hazards of defendants' business and Longacre's and Hazelwood's lamentable play. No risk or peril incidental to defendant's business caused Hazelwood's death, and the accident relied upon by plaintiffs did not arise out of Hazelwood's employment."

In Allburn Coal Corporation v. Wilson, 222 Ky. 740, 2 S. W. (2d) 365, a petition to reopen a case before the Workmen's Compensation Board alleged that an employee for whose death the employer and its insurance carrier had previously agreed to pay compensation had been murdered in the course of his duty, instead of having met an accidental death in a mine where he was employed. It was held that the case should have been reopened because of the discovery of that fact (the allegations being taken as true), the court saying that if he was murdered then his death did not result from accident arising out of and in the course of his employment.

While this tragedy did occur while the employee was in the discharge of his duty, his death cannot be said to have been an incident of his work, flowing therefrom as a natural or reasonably anticipated consequence or having a causal connection therewith. The court is unwilling to give to the statute the extremely liberal interpretation placed upon it by the learned trial judge.

It is therefore of the opinion that error was committed in adjudging the deceased employee's dependents entitled to compensation from the appellant.

The judgment is accordingly reversed for consistent proceedings.