(130 So. 334)

**WILLIAMS BROS. v. STAGGS.**

6 Div. 639.

Supreme Court of Alabama.

Oct. 16, 1930.

Huey, Welch & Stone, of Bessemer, for appellant.

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellee.

THOMAS, J.

The suit was for personal injury. Defendant moved the cause be transferred from the jury docket to the compensation docket, which motion was denied.

The evidence shows that appellants were engaged in constructing a pipe line through the county of Jefferson, and employed on the "whole job down there * * * three or four hundred men." Witness Roberts so states, and in conclusion says that many men were working on this job, "laying the pipe" down there where Roberts, Cantrell, and Staggs were working.

The evidence further shows that Cantrell and plaintiff were, at the time and place in question, both employees of defendant, and so acting for the master when they became engaged in conversation about tools or machinery to project the work and the battery occurred.

When plaintiff testified in the first instance, he said he was employed and "on the job at the time this happened," meaning on his work "at the time this fight occurred" and in which his injury complained of was inflicted; that "at the time of this fight Cantrell, Greely Roberts and Mr. Garrett and myself (witness) were all employees *there on the job*. All of us were working there that day when this happened, and we were in the regular course of our employment there"; that "the work that I was doing there and that Cantrell was doing there and that Greely Roberts and that Garrett was (were) doing was all along in the regular line of our work. * * * I was walking up the ditch line. At that time I wouldn't say how far it was from where it happened. In my judgment I suppose it was something like a block. I was out of the ditch and out on the ground, then. I was not coming back toward the place where I had come from down there for the air compressor, I was going right up the ditch line. This was the ditch that the defendant was digging there, and that is where I had been working. I was working along this ditch, not at any particular place. I was all up and down the ditch." (Italics supplied.)

After the motion to transfer the cause under the foregoing evidence was overruled, plaintiff was recalled and testified in substance that he "was running a compressor down there on the day that" he was assaulted; that the duties of a compressor man were to watch after the gas and oil in it; that he "had no other duties except that"; that "a fellow by the name of Slim" who was not his foreman asked him "to go to deliver this message to Mr. Cantrell"; that he was at his compressor when Slim spoke to him about it;

that he "was just standing there by the compressor watching it"; that to the best of his ideas his compressor was about 200 yards from where Mr. Cantrell was working; that up to that time he had been running a compressor "something like two months" and was "familiar with how they are operated"; that he had been running this particular compressor "something like two weeks."

The evidence further showed that Mr. Staggs "came up there and told him (Mr. Cantrell) that he wanted a jack hammer for the jack hammer man across the hill to put down some holes"; that "Mr. Cantrell asked him who in the hell sent him over there. I was going back and forth there at the time, busy about my work. The next words that I heard between Cantrell and Staggs were that Cantrell told him that he was tired taking orders," and hit him.

It is further shown by the evidence, witness Staggs testifying, that:

"When I first approached him and began talking to him that morning he was standing near the ditch on the bank of Little Shoal Creek. There were two negroes up there in Little Shoal Creek and there was a carpenter up there, something like 15 or 20 feet of him. Mr. Greely Roberts was fixing a little old,— I reckon you call it a coffer dam, that run the water through the creek. That morning I walked on down to where Mr. Cantrell was. This fellow Slim was supposed to be the ditch foreman. I told Mr. Cantrell that I wanted an air drill over in the next hollow in about forty minutes and he said that he got tired of taking orders * * * then he hit me over the left eye. * * * Mr. Cantrell had been on that job down there before this fight took place just a few days. I wouldn't say just how many, but I suppose something like four or five days."

The evidence further shows that: "Down there that day I also saw Mr. Garrett, the ditch foreman. Yes, sir, Mr. Garrett was the ditch foreman; he was in charge of that particular ditch."

The tendencies of this evidence are that Garrett and Slim were foremen on the job, and Garrett was in charge at the place where plaintiff and others were at work. Cantrell was there as recent foreman, but his specific duties and authority are not fully disclosed. It is clear that Slim sent the order to Cantrell for the drill or compressor by the plaintiff. Defendant's interrogatory says that Cantrell's "duties were to supervise the laying of the pipe *and the progress of our (the) work.*" (Italics supplied.)

The defendant requested the general affirmative charge. There was evidence authorizing the inference of Cantrell's authority or that he was acting within the line of his responsible agency; that defendant was employing sixteen or more men on that work in question (Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626); and the assault and battery complained of occurred in that work and arose out of a controversy relating to the due conduct and progress thereof, and that the altercation between plaintiff and Cantrell resulted in accident and physical injury under and within this court's construction of the statute. Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188; Dean v. Stockham Pipe & F. Co., 220 Ala. 25, 123 So. 225; Rochester-Hall Drug Co. v. Bowden, 218 Ala. 242, 118 So. 674; St. Louis-San F. R. Co. v. Robbins, 219 Ala. 627, 123 So. 12. And the case was in all respects subject to the provisions of the Workmen's Compensation Act (Code 1923, § 7534 et seq.). The case should have been transferred from the jury to the compensation docket; and affirmative instruction requested should, for the foregoing reasons, have been given. It will be said out of abundant caution that the ruling here as to the affirmative charge be not taken as affecting plaintiff's right when tried on the compensation docket and when so transferred.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.