## Howard v. Dawkins Log & Mill Co. et al.

Oct. 4, 1940.

J. B. Howard, Judge.

Chester A. Bach and O. J. Cockrell for appellant.

Dysard & Tinsley for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee, Dawkins Log and Mill Company, is a corporation, engaged in the timber and lumber business. On and prior to May 7, 1936, it operated a lumber camp in a remote section of Breathitt County, Kentucky, whereon was maintained a commissary store, but which was not owned by the Company. Other buildings necessary for the local operations were erected on the camp site, and which, altogether, occupied a more or less extended area. The appellant, Larkin Howard, on the day indicated, and prior thereto, was its employe, whose duties were those appertaining to a watchman and general maintainer of the peace upon the grounds of the camp. To enable him to make arrests of those guilty of infractions of the law he was appointed and qualified as a deputy sheriff of the county. His duties, of course, required of him the making of circulating trips over the grounds to see that order was maintained and to protect, no doubt, the property of his employer, and also the right of employes in different departments of the work. According to the uncontradicted proof in the case—including the testimony of appellant himself—he had never made any arrests during his employment, nor had he in any wise antagonized any person in the discharge of his duties either as such peace officer or otherwise. In other words, his official career at that place had been entirely harmonious and unperturbed.

On the morning of the indicated day he was returning from the place where he had obtained his breakfast, the time being about 5:30, and while making that return trip, and without any warning whatever, he was shot in the shoulder from ambush, the place from which the firing was done being the mountainside bordering the camp grounds. Neither appellant nor anyone else saw either the exact spot from whence the shot was fired, nor did anyone ever see the perpetrator, whose identity is unknown to this day.

Both appellant and appellee had accepted the terms of our Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., and on August 31, 1936, appellant duly and regularly made application to the Workmen's Compensation Board for an award under the Act for an allowance as measured by its terms and the extent of his injuries. After hearing the evidence conforming to our statement supra—the board dismissed the application. Within the time allowed by the Statute appellant petitioned the Breathitt circuit court for a review of that order of the board, which resulted in a judgment affirming it, and from that judgment appellant prosecutes this appeal, which, as will be seen, presents the narrow, naked and concrete question as to whether or not the injury received by appellant, and for which he seeks compensation, was an "accident arising out of and in the course of his employment," since the statute provides compensation only for accidental injuries so occurring.

Both the board and the court leaned to the conclusion that appellant's injuries may have arisen "out of" his employment, but they each further concluded that the accident did not occur "in the course of his employment." So that, if we should concur with their conclusions and hold that the injuries arose "out of" appellant's employment, there yet remains the question as to whether they arose "in the course of his employment," since both requisites are essential under the terms of the statute to entitle the employee to compensation.

In an effort to procure a reversal of the judgment, followed by an adjudication by this court of appellant's right to compensation, his counsel cite many cases to the effect that such statutes should be liberally construed in favor of an employe so as to effectuate the

purpose and intent of the legislature in enacting them, and all of which we now, as we did in the cited cases (and in all others) most emphatically approve. But liberality of construction or interpretation—as well as administration—does not license the court or the administrative board to amend or emasculate the statute so as to create liability thereunder when it by its express terms, as construed and applied by the courts, excludes the particular accident from the benefits conferred.

Since the inauguration of compensatory legislation in the form of workmen's compensation acts, the courts of the various states adopting them have dealt with similar situations and conditions as are presented by this record—i. e., where an employee is assaulted by a third person whereby injuries were sustained—and in every case involving the question compensation was denied, unless by the most liberal interpretation of the terms of the statute involved it could be fairly inferred that the assault could be attributed to some cause emanating from a duty performed by the employe (or, perhaps, some failure to perform a duty), and which was incumbent upon him as such employe, so as to cause the accident to arise both "out of and in the course of his employment," and such only is the effect of the various cases cited by appellant's counsel. The same is also the effect of all text writers on the subject and other cases cited by the latter in support of their text. More concretely stated courts lean to the interpretation that compensation should be allowed for all such injuries inflicted by third persons (whether maliciously done or not) when the cause therefor is shown by the evidence to have sprouted from the performance of the servant's duties to his master and it could fairly be said that the assault was the legitimate fruitage of the employment.

Mr. Schneider in volume 1 of his two volume treatise on Workmen's Compensation Law, second edition (1932), beginning on page 994, Section 294, and extending through Section 295 beginning on page 1007 (the latter section dealing with the Burden of Proof), cites and discusses a number of cases from different courts wherein the liberal construction rule was applied so as to allow compensation, and other cases where, although that rule supra prevailed, the court denied liability because neither the evidence nor any legitimate inference to be drawn from it even remotely established that the

assault was committed in any manner authorizing the conclusion that it arose "out of and in the course of" the employment of the applicant, or of his dependents if death ensued. This opinion need not incorporate a list of those opinions since our reference to them is sufficient to enable one investigating the question to locate them and their enumeration here would unduly lengthen this opinion without materially adding to its service in the investigation of the involved question.

However, we do deem it incumbent upon us to say that in each and every one of them, as well as in the domestic cases hereinafter cited it was found, under the liberal construction rule as a legitimate inference from the proof, that the particular assault through and by which the injuries were inflicted, emanated from something done, or from some purpose to prevent his doing something within the purview of his employment, and but for the employment he could and would not become a target for the assault. Also, in the cases where compensation was allowed there appeared from the proof more complete details of what happened at the time of the assault and, perhaps, the person who committed it, together with all of the circumstances connected therewith—from which the conclusion was drawn, under the rule supra, that it was a case compensable under the statute. However, neither we nor counsel have been able to find any case wherein a secreted assault (such as the one in this case, resulting in injuries to the employe) the courts upheld the right of compensation in the absence of some testimony furnishing the indulgence of at least a reasonable inference that the perpetrator sought the accomplishment of some purpose, the realization of which made the employe his target. Hence the New Jersey court in the case of Schmoll v. Weisbrod & Hess Bridge Company, 89 N. J. L. 150, 97 A. 723; 14 N. C. C. A. 233, denied compensation where an employe was shot at night but the proof showed that the motive for the shooting "was unknown." To the same effect are the cases of In re Harbroe's Case, 223 Mass. 139, 111 N. E. 709, L. R. A. 1916D, 933; 11 N. C. C. A. 246; Heidemann v. American District Telegraph Company, 193 App. Div. 402, 183 N. Y. S. 924; Flucker v. Carnegie Steel Company, 263 Pa. 113, 106 A. 192; 18 N. C. C. A. 1055; Sparks Milling Co. v. Industrial Commission, 293 Ill. 350, 127 N. E. 737.

In volume 72 A. L. R. beginning on page 110 is an annotation upon the subject of injuries to the employe from assault, which supplements other annotations upon the same subject in 29 A. L. R. 438, and 40 A. L. R. 1123. On page 116 of volume 72 of that publication, under subdivision III, the annotator discusses the applicability of the provisions of the statute to injuries inflicted by the "Wilfull Misconduct of Third Person." Under that heading there are cited the cases of Enterprise Foundary Company v. Industrial Accident Commission, 206 Cal. 562, 275 P. 432; Pickett v. Southern Carbon Company, 7 La. App. 296, and Wall v. Royal Indemnity Company, Tex. Civ. App., 299 S. W. 319, the facts in each of which were very similar to those presented by this record, and in which those courts denied the right of compensation to the applicant because there was no foundation for the conclusion that the attack had any causal connection with the work of the employe and, therefore, it did not "[arise] out of and in the course of his employment."

Appellant's counsel cite in support of his contention, that the injuries of his client are compensable under the terms of the statute, the domestic cases of Hansen v. Frankfort Chair Company, 249 Ky. 194, 60 S. W. (2d) 349, and Black Mountain Corporation v. Daniels' Guardian, 258 Ky. 645, 80 S. W. (2d) 824. But a reading of those opinions most clearly reveals that the assaults in each of them were undoubtedly made and perpetrated, in circumstances and manner, so as to completely justify the conclusion that they arose out of and in the course of the employment of the assaulted employe. Such facts need not be enumerated in this opinion, since they may readily be found by a reference to our opinions in those two cases. On the other hand, the proper rule that should govern the administration of the statute in such circumstances as are developed by this record is formulated, stated and approved in the domestic cases of January-Wood Company v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117; Kentucky Fluorspar Company v. Wolford, 263 Ky. 471, 92 S. W. (2d) 753, and Alburn Coal Corporation v. Wilson, 222 Ky. 740, 2 S. W. (2d) 365, and others both foreign and domestic cited in those opinions.

Under the facts as enumerated in the Schumacher case, we denied the right to recover compensation for

injuries inflicted by an assault upon the servant result-ing in his death, and in the course of the opinion reach-ing that conclusion we said [231 Ky. 705, 22 S. W. (2d) 120]: "The Compensation Act does not afford compensation for injuries or misfortunes which are merely contemporaneous or coincident with the employment or collateral to it. There must be a direct causal connection between the employment and the injury. That is an essential connecting link to the operation of the act. It is absent in this case. Schumacher's death cannot be traced to any cause set in motion by his employment. We cannot reason from the sequel to the cause. The fact that he was on the company's premises at work when killed by Eddings for reasons wholly unconnected with his employment and entirely unassociated with the relation existing between his employer and himself does not seem to this court sufficient to justify an award of compensation, which is in effect but holding the company responsible in a degree for his murder." The facts of that case furnished much more room for bringing it within the class of compensable cases under the liberal construction rule than is found in the instant case. In that case the circumstances of the assault, including the facts occurring at the time, were proven—but which was not done in this case, thereby furnishing no room for any justifiable inference that the assault upon appellant had some cause or connection with his employment in the absence of any testimony even remotely support-ing it.

Compensation acts, though required to be liberally construed for the benefit of the employe, nevertheless prescribe rights and obligations extended to and im-posed upon both employer and employe. They were not designed to foster any species of confiscation, and no court is authorized by them to take the property of the employer and deliver it to the employe, unless justified under the terms of the statute in doing so. In no case may it be done unless the inflicted injury for which compensation is sought by appellant arose out of and in the course of the employment. As we have seen, the assault occurred to appellant as he was journeying from his early breakfast to other parts of appellee's premises. No motive therefor by anyone can possibly be gleaned from the evidence. It may have been founded in a desire on the part of the assailant to avenge some act oc-

16

curring long anterior to the employment, or occurring in circumstances clearly removing it from the embracing terms of the statute. Also, it may have occurred as a pure accident whereby the one who fired the shot that wounded him never intended to inflict it upon him, but that he was the unfortunate victim of a misdirected firing at something else, the assailant not knowing that appellant was within the range of the projectile. Also, the injuries to appellant may have been inflicted by some insane person wholly irresponsible for his deeds, and in which event it would have no causal connection with appellant's employment. The cause of the wounding remains a mystery to this day, and the motive for it is equally obscure.

The burden of proof is upon the claimant to show that injury for which he seeks compensation under the act arose "out of and in the course of" the employment. See Section 295 supra of Schneider on Workmen's Compensation Law. In meeting that burden the liberally permissible rule supra requires that there should appear some motive for the perpetration of the assault having some causal connection with the employment, and which is the ruling of every court in all of the cases coming under our observation in which the question was involved. And so we held in the case of Lexington Railway System v. True, 276 Ky. 446, 124 S. W. (2d) 467, where a streetcar conductor was unintentionally shot through the window of his car by a youth from premises adjacent to the streetcar line and which had no causal connection with the claimant's employment, that the conductor was not entitled to compensation. That case, and the other authorities cited supra, we deem conclusive in this one—for which reason the court did not err in affirming the order of the Compensation Board.

Wherefore, the judgment is affirmed.