## Nolley v. Diamond Coal Co. et al.

Oct. 30, 1942.

Fox & Gordon for appellant.

Gordon, Gordon & Moore for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

Appellant on June 28, 1941, filed claim with the Compensation Board, and on December 18th, Referee, who had heard the case, recommended that the application be dismissed. Upon motion of applicant the matter was taken to the full Board, and that body after a hearing adopted the recommendation. Thereafter applicant petitioned for review in the Webster circuit court; the court upheld the Board's ruling and dismissed the appeal. From this order Nolley prosecutes appeal, it being contended that the Board erred in its conclusions of law.

It is agreed that parties had accepted the provisions of the compensation law; that appellee had timely notice of injury, which arose out of and in the course of employment, and that the wage earned by applicant at the time he ceased work would justify maximum compensation. The transcript shows that Nolley was forty-six years of age. He had worked in West Virginia coal mines prior to coming to Kentucky in 1925, where he later began operating a cutting machine for appellee, working continuously until some time in April, 1941, when he stopped on account of the condition of his health. At that time and prior thereto, he suffered from a soreness in his throat and chest; had trouble breathing and was subject to severe coughing spells. Nolley testified to these facts and described the mine, the place where he worked, and the operation of his machine used in cutting through a vein of coal. The bit of this machine was geared for hard cutting, creating heavy friction. In certain places in the coal there were substances much harder than the coal, making it difficult for the bit to pierce through. He said the dust "is carried back and dropped behind the machine," much of which he inhaled.

Appellant was examined by one doctor who advised him to go to bed for rest, which advice he followed. He had developed a severe cough which had existed for "a year or two;" prior to that time he had not suffered from any ailment. The dust he had inhaled, he described as coming from something like sandstone and "mother coal," which had shown in the coal "mostly all the time" he was working for appellee.

Other witnesses, miners, corroborate Nolley as to the character of the coal, and the difficulty in, and results from, cutting through the hard substances. The employer introduced no proof.

It is unnecessary to go further into details as to the character of the mine, or the working of the machine and results, since the determination of the question presented turns on the evidence of the doctors who examined Nolley, and the application of the provisions of the Compensation law. Both doctors agree that he was tubercular, the disease arising from a thoroughly developed silicosis condition, which they agree incapacitated him for work, and would eventually end in his death.

There is no argument concerning these two conclusions. That silicosis is universally treated as an occupational disease, is shown by reference to cases dealing with the subject. For example see Svoboda v. Mandler, 133 Neb. 433, 275 N. W. 599; Morrison v. Indus. Acc. Comm., 42 Cal. App. (2d) 685, 109 P. (2d) 767, and Bolosino v. Laclede Christy Clay Products Co., Mo. App., 124 S. W. (2d) 581.

The Referee in a comprehensive opinion, stating the undisputed proof substantially as above, found that while both parties were subject to the Compensation Act, there had been no acceptance under what is called the "Silicosis Amendment" of 1934, a finding not disputed, and on the basis of the doctors' conclusions that Nolley's trouble arose from silicosis, held the injury not compensable.

Upon review the Board found no factual questions involved. Its opinion went into detail in showing character, causes and effects of silicosis, the disease which Dr. Crimm, a specialist, found leading to tuberculosis. The Board then took up Section 4880, Ky. Statutes, KRS 342.005, and construing and applying it to the facts, held that since the parties had not accepted the terms of the silicosis amendment, the claimant was not entitled to compensation.

In order to get directly to the contentions of parties we here quote the statute in part as originally enacted, and the two amendments, the first italics being the 1924 amendment, Acts 1924, c. 70; the second the amendment of 1934, Acts 1934, c. 89. After designating employees to whom the act should apply, the section reads:

"It shall affect the liability of the employers subject thereto to their employees for a personal injury sustained by the employee by accident arising out of and in the course of his employment, or for death resulting from such accidental injury; provided, however, that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease *but shall include injuries or death due to inhalation in mines of noxious gases or smoke; commonly known as 'bad air,' and also shall include the injuries or death due to the inhalation of any kind of gas.* Any employers and employees who are by the provisions of this section excepted from the provisions of this Act, including employers not having less than three employees, may subject themselves thereto by joint voluntary application to the board, in writing, for such period as may be stated in the application, which shall be irrevocable during such period and effective thereafter until a written revocation be filed with the board or the employment be terminated, *and any employers and their employees engaged in the operation of glass manufacturing plants, quarries, sand mines or in the manufacture, treating or handling of sand may, with respect to the disease of silicosis caused by the inhalation of silica dust, in like manner voluntarily subject themselves thereto as to such disease.*"

The 1924 amendment followed (in time) our decision in Jellico Coal Co. v. Adkins, 197 Ky. 684, 247 S. W. 972. Thereafter by Ch. 89, p. 393, Acts of 1934, the legislature further amended the acts as above indicated.

Appellant's counsel states the sole issue to be whether or not the legislature when it used the word "diseases" meant to include all diseases, or whether it meant the section to apply to some and not to other diseases, insisting that the intention manifestly was to compensate for injury resulting from any and all diseases arising while in the course of employment, "and if not who is to determine what diseases are included."

The answer is that the legislature determines what are compensable injuries; it is for the Board and the courts to say what diseases come within the class. This

is evidenced by a reading of the statute, its progress as time and experience lead to changes; at first the disease must have arisen from traumatic injury. Adkins' case, supra. Later "personal injury by accident" was to include "injuries or death due to inhalation in mines" of bad air or gas. Up till 1934 silicosis, an occupational disease, was not compensable, and thereafter applied only to a class of employers and employees upon voluntary subjection.

In the Adkins' case we concluded that a disease contracted by an employee in course of employment not arising from traumatic injury, though due to the negligence of employer, constituted an injury to be redressed at common law. We said that if the legislature had desired to make occupational diseases compensable, it had ample precedent in the laws of England and in statutes of sister states. Then followed the "bad air" and "gas" amendments, which we have applied in numerous cases since its effective date.

Counsel in undertaking to show that the proper construction of the quoted statutes leads to the inevitable conclusion that the legislature intended to make all diseases compensable, refers us to Schabel v. Riddell-Robineau Mfg. Co., 245 Ky. 409, 53 S. W. (2d) 750, the "sawdust" case, wherein it appeared that the employer's engineer was directed to adjust a water pipe attached to a boiler; the pipe burst and the effect was to fill the employee's lungs with sawdust. He contracted pneumonia and gangrenous lungs, and soon died as a result of the accident injury.

Without going into detailed reasoning, we held the injury compensable on the authority of Great Atlantic & P. Tea Co. v. Sexton, 242 Ky. 266, 46 S. W. (2d) 87, 90, in which we upheld compensation where it appeared claimant was dressing rabbits for employer's meat market and contracted tularemia, because the injury was traceable to a definite accident as the word is used in the compensation law, and not "a gradual development arising out of natural dangers incident to the employment, but was sudden, unexpected, and unusual, without any of the distinctive features of an occupational disease."

Counsel also rely upon Crutcher Dental Depot v. Miller, 251 Ky. 201, 64 S. W. (2d) 466. Miller, an employee, breathed gas from a chronium plating machine, which caused mitral stenosis and tuberculosis. In hold-

ing compensable injury we turned liability on the use of the words "inhalation of any kind of gas," interpolated in the 1924 amendment, tracing the history of the law, and adverting to the Adkins' case. We analyzed and differentiated these cases in the American Rolling Mill v. Pack case, 278 Ky. 175, 128 S. W. (2d) 187, and further pointed to a distinction between them and Mills v. Columbia Gas Con. Co., 246 Ky. 464, 55 S. W. (2d) 394, the contaminated water typhoid fever case.

Counsel contends, however, that the court by its opinion in the Miller case intended to and extended the scope of the act "so as to bring within its provisions all diseases not theretofore compensable under the former provisions," and insist that the language is of such import. We do not so construe it. What we did say in the Crutcher case in reference to the 1924 amendment was:

"Unquestionably the Legislature by the amendment intended to extend the scope of the act so as to bring within its provisions *injuries* not theretofore compensable." (251 Ky. 201, 64 S. W. (2d) 468).

By the 1934 amendment the legislature recognized that the disease of silicosis was not compensable under its 1924 amendment, otherwise it would not have made this injury compensable only upon the election of parties. We cannot read into the act as amended any manifested purpose to make silicosis compensable, except upon the conditions stated.

Counsel correctly contends that we have frequently held that the compensation law must be liberally construed so as to attain the undoubted purposes of the act as shown by the cases cited in appellant's brief, and many others which may be found in "Workmen's Compensation," Kentucky Digest, Key 51. However, it may be noted that we have also held that it is not our province to read into the act provisions to meet claims which are not covered. Howard v. Dawkin's Log & Mill Co., 284 Ky. 9, 143 S. W. (2d) 741. We express the same feeling toward appellant evinced in the opinion of the Board, but this should not lead us to a strained construction of the law. We are of the opinion that the Board correctly construed the applicable law.

Judgment affirmed.