## United States Coal & Coke Co. v. Sutton et al.
## Williams v. United States Coal & Coke Co.
(Decided May 7, 1937.)

WILLIAM SAMPSON for United States Coal & Coke Co.

GOLDEN & LAY for Mrs. Williams.

WILLIAM I. DAVIS for the infant children.

B. M. VINCENT, Attorney General, for Compensation Board.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

On October 31, 1933, Sewell Sutton, whose wages then were $21 per week, died of injuries he had received the day before while working for the United States Coal & Coke Company.

These parties were operating under the Kentucky Workmen's Compensation Act (Ky. St., sec. 4880 et seq.), and within a few days an application on form 11 for adjustment of a claim for compensation was filed by Nancy Williams, the mother of Sewell Sutton, and in answer to question 18 she named herself and her son's two infant children as his dependents; and on November 13, 1933, Lurla Fannon (their maternal grandmother), as their next friend, asserted a claim for Luther Sutton (aged 6) and Mary Lee Sutton (aged 4), the infant children of Sewell Sutton, as being sole and total dependents left by him.

A three-cornered controversy followed, Mrs. Williams (the mother of the deceased) alleged and sought to show she was totally dependent upon her son and

claimed all of the compensation; their maternal grandmother, Lurla Fannon, as next friend of the children of the deceased, claimed and sought to show that those children were totally dependent upon their father, were his only dependents, and that all of this compensation was due them, and the United States Coal & Coke Company insisted Sewell Sutton left no dependents and that all it was required to pay to any one was to pay Sutton's burial expenses and $100 to his administrator. See section 4893, Ky. Stats. On March 19, 1935, the Hon. Harry L. Hargadon, referee of the board, found Nancy Williams was 25 per cent dependent upon the deceased, that these two children were totally so, and made this award.

### Award.

"This case having been submitted to the Workmen's Compensation Board for trial, judgment and award, and the Board being sufficiently advised, it is hereby ordered and adjudged that the plaintiffs, Luther Sutton and Mary Lee Sutton, recover of the defendant, United States Coal & Coke Company, through their legally appointed and qualified guardian, the sum of Nine ($9.00) Dollars per week from the 31st day of October, 1935, and for a period of 335 weeks thereafter, together with 6% interest on all past due payments. Further that the plaintiff, Nancy Williams recover of the defendant, United States Coal & Coke Company, compensation at the rate of Three ($3.00) Dollars per week, beginning on the 31st day of October, 1933, and for a period of 335 weeks thereafter, together with 6% interest on all past due payments. The whole award, however, shall in no event exceed the sum of Four thousand ($4,000.00) Dollars."

### After Award Was Made.

On March 23, 1935, Mrs. Nancy Williams sought a review by the full board and the United States Coal & Coke Company did the same.

Upon a full board review the only change made in the above award was this:

"It is ordered by the Board that those parts of the award of March 19, 1935, wherein it is directed that

defendant shall pay to claimants 6% interest on all past due payments shall be eliminated due to the fact that defendant had no means of rightfully determining to whom payments of compensation should be made, if any.''

### Circuit Court Review.

On September 6, 1935, the United States Coal & Coke Company filed in the Harlan circuit court its petition for review, to which it made these two children and the board defendants and in which it made this complaint:

"This plaintiff says that the said board in its award and in its order directing the payment of compensation herein and by the Full Board's order affirming said award in so far as the defendants, Luther Sutton and Mary Lee Sutton are concerned and in so far as they were ordered and adjudged to be paid any compensation acted without and in excess of said Board's powers; that the said order and award in so far as the payment of compensation to Luther Sutton and Mary Lee Sutton is concerned are not in conformity with the provisions of said Compensation Act; that the findings of fact in so far as said Luther Sutton and Mary Lee Sutton are concerned are not supported by the evidence; that there is no evidence to support them and that the order and award of said Board are not supported by the findings of fact or by the law, but that the award and order in so far as they direct the payment of any compensation to the said Luther Sutton or Mary Lee Sutton are contrary to law and erroneous.''

On September 30, 1935, Mrs. Nancy Williams filed in the Harlan circuit court her petition for review, making the coal company, these two children, and the board defendants, and in which she makes the following complaint:

"Your petitioner says that now, within less than twenty days, and in fact, within seven days, from the time she received notice of said award, she files her petition herein and asks that the award of said Board be reviewed, and states that same is in error, because the Board acted in excess of its authority

in determining that your petitioner was only 25% dependent upon the deceased, and that the defendants, Luther and Mary Lee Sutton were totally dependent; second, that the order and decision of the Board is not in conformity with the provisions in this Act, as this Act requires the Board to render its award on the evidence taken and filed before it; third, that the findings of fact are not supported by any evidence, and the award adjudging your petitioner to be only 25% dependent, has no evidence in the record to sustain such finding, and that the award is contrary to the law and facts in this case.''

Mrs. Williams made no effort to bring the children before the circuit court upon her petition for review, and it may be the steps taken by the United States Coal & Coke Company were insufficient to bring them before the circuit court upon its appeal, but we do not find it necessary to decide these questions.

The two petitions were consolidated in the circuit court and in due time this judgment was entered:

"The Court having considered the said certified copy of said record of said Compensation Board, the pleadings, proof and the exhibits and being advised is of the opinion and adjudges that the award of the said Board does not contain any error and that said award be and the same is hereby in all things approved and affirmed and that the plaintiffs, Luther Sutton and Mary Lee Sutton, recover of the defendant United States Coal & Coke Company, their costs herein expended and that the United States Coal & Coke Company recover of the plaintiff, Nancy Williams, its cost herein expended. To which ruling of the court the said Nancy Williams objected and excepted and prayed an appeal to the Court of Appeals which is granted. To that part of the judgment which affirms the award of the Compensation Board awarding to Luther Sutton and Mary Lee Sutton, any compensation the United States Coal & Coke Company, objected and excepted and prayed an appeal to the Court of Appeals which is granted.''

Now followed these motions and grounds for a new trial:

"Comes the United States Coal & Coke Company and moves the court to set aside the judgment of the court herein and to grant to it a new trial upon the following grounds and for the following reasons: Because said judgment of the court is contrary to law and not supported by the evidence."

"Comes the plaintiff, Nancy Williams, and moves the court to set aside the judgment in this case and grant to her a new trial because the court erred in adjudging that she was only twenty-five per cent dependent upon the deceased, Sewell Sutton.

"2nd. Because of error of the court in holding that there was any evidence that she received any support from any person other than her deceased son.

"3rd. Because of error of the court in adjudging that as a matter of law, that the legal responsibility was upon the other children of Nancy Williams to support her, and for that reason, she was only twenty-five per cent dependent upon her deceased son.

"4th. Because of error of the court in finding that there was any competent evidence in the record to support the award of the Workmen's Compensation Board."

On February 20, 1936, both motions for new trial were overruled. The plaintiffs excepted, and these appeals were granted.

Thus we see no one has appealed from the action of the board in awarding to Mrs. Williams $3 per week as a dependent and she is appealing as against the board and the employer, United States Coal & Coke Company, and complaining because of the award allowing her no more than $3 per week and because of this award allowing these children anything, but she failed to make these children appellees, and the United States Coal & Coke Company is also appealing and complaining of the allowance of anything to these two children.

The whole fight here is centered on the award to these children, so we shall consider their claim first.

Neither Mrs. Williams, his mother, nor these ap-

pellees, his children, were living with Sewell Sutton at the time he received his fatal injuries, and hence section 4894 thrusts upon them the burden of establishing their dependency, and the statute cuts them all out entirely unless they were then being supported by the injured employee.

### Status of the Children.

On July 6, 1925, Sewell Sutton, the deceased employee, was married to Miss Madge Fannon. To them there were born the two infant claimants, Luther Sutton and Mary Lee Sutton. On November 23, 1931, a divorce was granted to Mrs. Sutton by the circuit court of Claibourne county, Tenn., and she was awarded the custody of these two children, nothing being said in that decree about their support. On that or the following day, the erstwhile Mrs. Sutton married Kyle Bush, her present husband, and they now have two or three children as a result of their union. There was some rumor that these Sutton children were not well treated by Mr. Bush, and on August 28, 1933, Sutton wrote this letter to his mother-in-law, so she testified:

"Benham, Kentucky,

"August 28th, 1933.

"Mrs. W. C. Fannon:—

"Will answer your letter received today. Glad to hear from you all, and to know the children's shoes fit them.

"Say Lurla, you can bring the kids up to your house and I will clothe and help feed them as long as I live and can work if I keep my health.

"I know that I can feel better if you keep the kids for me. I sure will do my part for them if you will get them and keep them.

"When you do get them, I will be down there to the fair, if nothing happens to me and we can talk it over then.

"So you get them and I will pay you all for keeping them for me and Kyle will not have to be troubled with them. I do not like the idea of him keeping them anyway, so you get them and write me and let me know when you get them and when

I come down there I will get them some clothes and give you some money for them.

"I think you would be better to them than anybody I know of and you send Luther to school and I will send you the money to buy his books with. So be sure and start him to school when it starts.

"Let me know when you get them. Tell them I am well and am working every day. Sure would like to see them, so I guess I had better close for this time. So let me know what you want to do.

"As Ever, Sewell Sutton."

The writing of this letter by the deceased was farther established by the testimony of Margaret Winston, a sister of the deceased, who testified she read it before her brother mailed it. The United States Coal & Coke Company objected to the introduction of this letter but we find it was properly admitted. It was something more than just an occasional note. This letter and the proposals he made in it became, when Mrs. Fannon accepted it by acting upon it, a contract between Sewell Sutton and Mrs. Fannon, a contract for her to get, keep and care for these children for him, and for Sewell Sutton to pay her therefor. She was carrying out her part of that contract when the fatal accident befell Sewell Sutton, and she had made no complaint of any default on the part of the deceased. Hence, we must hold he was supporting his children.

The fact that the mother of these children had been awarded their custody did not relieve ther father of his obligation to support them imposed by section 328, Ky. Stats. Sewell Sutton showed no disposition not to support them, but he had had a long spell of illness (about seventeen months) culminating in a mastoid operation followed by a slow recovery, but as soon as he could he went to work, and as quickly as he recovered from his operation and paid his hospital and doctor's bill he took active steps to arrange for the support of these children, as is shown by the letter above, and there was evidence that thereafter he did support them, doing for them all he could under the circumstances. Mrs. Lurla Fannon testifies he gave her about $25 per month for them. Mrs. Bush (the erstwhile Mrs. Sutton) testifies that after August, 1933, these children did

not make their home with her but with her mother, Mrs. Lurla Fannon, and that she and Mr. Bush did not contribute to their support. The amount of their father's contribution is disputed, but that is not the question. The question is dependency, not contribution. We know from their ages these children are not self-supporting; they are totally dependent on some one. The Workmen's Compensation Board has found they were totally dependent on their father. They are declared by section 4894, Ky. Stats., to be wholly dependent on him if they were actually supported by him at the time of the accident. The next question is, to come within the statute, must a child be actually and wholly supported by its father, or can a child be said to be actually supported by its father who makes contributions to its support but not in such amounts as will meet its every need. To say "actually supported" means actually and wholly supported would be to write into the statute something not written into it by the legislature. We feel we have already answered this question in Sandlick Coal Co. v. Day et al., 223 Ky. 632, 26 S. W. (2d) 521, where we said:

> "Appellant introduced a lot of evidence to establish that Cecil Day spent a large portion of his earnings upon himself, from which it is argued that the appellee, therefore, was not totally dependent upon her son. But whether her dependency was total or not, did not turn on how much her son contributed of his wages to her support, but whether she had to look to him entirely for that support."

Dependency is not determined by the moral or legal obligation of the employee to support the claimant (see Franklin Fluorspar Co. v. Bell, 247 Ky. 507, 57 S. W. (2d) 481); but by the status the employee had made and his adherence to the relationship thus made and recognized by him, and existing and observed by him at the time he receives his injury. A man may have no skill, and but little and irregular income, may have no home and have but one child, and that child may be so afflicted as to require the constant watchfulness of an attendant, special diets, frequent medical attention, and other care, the expense of which may be many times the earning power of its father, and the father may waste a large part of his income in riotous living or the father may himself be in poor health and be compelled as this father

was, to expend a large part of his earnings to regain or retain his own health; yet if he continues to recognize his obligations to support his child and to make contributions to its support, even though the contributions be small, yet if they amount to more than occasional gifts, mere tokens of affection, it cannot be said such a child is not wholly dependent on its father.

In Blue Diamond Coal Co. v. Frazier, 229 Ky. 450, 17 S. W. (2d) 406, 407, we said:

"The rule also is that the Compensation Act must be liberally construed, with the view to promoting its purposes. One of the purposes of the act is to provide for the dependents of the workman injured in the course of his employment, for their right to sue and obtain compensation for his death, under the constitutional provision, is taken away. The statute, therefore, should be liberally construed in their favor. A person may be wholly dependent on an employee, although he may have some slight savings of his own, or some other slight property, or be able to make something by his own services."

It is only in case of partial dependency that compensation is determined by the proportion of employee's earnings contributed by him to dependents during the year preceding the injury. Ky. Stats., sec. 4893, subsec. 3; Tway Coal Company v. Fitts, 222 Ky. 644, 1 S. W. (2d) 1082.

We find no error in the award made these children.

### Claim of Mrs. Williams.

This is the mother of the deceased. She was allowed $3 per week as a partial dependent. No one has appealed from that order, but she has attempted to appeal from the judgment because she was not adjudged to be wholly dependent on her son. She has some evidence her son contributed $40 per month to her support, paid her rent, coal bill, and other things.

The receipts and expenditures of Sewell Sutton from June 12, 1933, to his death show this.

Wages ....................................$425.09
Balance not drawn when he died ........$27.90
Orders given United Supply Co. ....... 102.07
Physician .......................... 5.00

| | |
|---|---|
| Insurance dues ..................... | 5.00 |
| Lamp service ...................... | 5.35 |
| Payment on cow .................... | 6.50 |
| 3 trips to Tazewell .................. | 30.00 |
| 5 months board at $30.00 per month ... | 150.00 |
| Clothes for children ................. | 9.63 |
| Cash for children ................... | 9.00 |
| Cash for children ................... | 9.00 |
| Clothes for himself ................. | 40.00 |
| Balance on which to support any one.. | 25.64 |

Total ..........................$425.09    $425.09

It is claimed in the evidence for Mrs. Williams that her son paid her rent, paid for her coal, paid for her meat, and let her have $40 per month. This $25.64 is all of his wages not accounted for, that would be $6.41 per month for him to spend upon himself or give to Mrs. Williams, so it appears quite impossible for the evidence for Mrs. Williams to be wholly true.

The statutory direction for determining the compensation to be paid to a partial dependent is found in section 4893, subsec. 3, Kentucky Statutes, and it is: "Partial dependency shall be determined by the proportion of the earnings of the employee which have been contributed to such partial dependent during one year next preceding the date of injury."

We know Sewell Sutton's total earnings after he began work for this company amounted to $425.09. All of this but $25.64 is accounted for. Let us assume Sewell Sutton spent not one cent of this upon himself, but spent the whole of it upon Mrs. Williams; then a simple calculation will show that she received a fraction over 6 per cent. of the wages earned by Sewell Sutton, and thus we see the board was quite liberal with her when it found her to be 25 per cent. dependent.

In arriving at this conclusion we have eliminated certain evidence regarding some life insurance Mrs. Williams collected on the life of her son, and evidence that she had three other children able to support her as well as a husband. We are sure she got all she was entitled to, and no one is complaining of what she got, and it is unnecessary to decide other questions in the record.

Judgment affirmed on both appeals.