## Johnson v. Kentucky Color & Chemical Co.

Jan. 14, 1941.

Mark Beauchamp, Jr., for appellant.

Davis, Boehl, Viser & Marcus and John L. Kilgarriff for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Ben Johnson, guardian for the three infant children of Harvey Adamson, deceased, has prosecuted this appeal from a judgment of the Jefferson circuit court affirming an award of the Workmen's Compensation Board for compensation for the children of the deceased. The facts are stipulated in the record and the question before us is one of law.

In order that the facts as stipulated may be clearly understood we here copy them in full.

"It is stipulated and agreed that both the deceased and the defendant herein had elected to, and were operating under the provisions of the Workmen's Compensation Act at the time of the injury, occurring on or about March 17th, 1938; that defendant had due and proper notice of the said accident, which arose out of and in the course of Harvey A. Adamson's employment, which resulted in his subsequent death. That at the time of his death the said Harvey A. Adamson was earning an average weekly wage of $15.83, and that the only question to be determined is as to the extent or percentage of dependency of the three infant claimants, namely, Albert Edward Adamson, Harvey Adamson, Jr., and Anna Margaret Adamson.

"It is further stipulated and agreed that the said three infants, Albert E., Harvey L., and Anna Margaret Adamson had been committed on February 2nd, 1929 by the Judge of the Jefferson Juvenile Court to the County Orphan Asylum, at Ormsby Village, in Jefferson County, Kentucky, and from date of their commitment up until his death, the decedent, Harvey Adamson, had been contributing to the support of his three infant children as aforementioned, the total sum of $4.00 per week.

"It is further stipulated and agreed that these weekly payments of $4.00 were made by the said Harvey Adamson to the Louisville and Jefferson County Children's Home, at the City Office 243 East Walnut.

"It is further stipulated and agreed that at the time of the death of said Harvey Adamson the $4.00 weekly payments were approximately ten weeks in arrears, although a $4.00 payment was made to the Louisville and Jefferson County Children's Home following the death of Harvey Adamson, or on March 31st, 1938.

"It is further stipulated and agreed that the $35.00 which was in arrears at the time of the payment on March 31st, 1938, covered the nine-year period during which these children were in the custody of the Louisville and Jefferson County Children's Home, and that during the last year of his life said Harvey Adamson made regular payments, and was not in arrears for the year 1937-38.

"It is further stipulated and agreed that the per capita cost of each child committed to the Louisville and Jefferson County Children's Home amounted to $10.00 per week, this sum representing the actual expenditure necessary to take care of each inmate of the institution, and as regards the three Adamson infants, namely, Albert, Harvey, and Anna Margaret, the per capita cost to the institution in caring for them was, and is the sum of $10.00 each week for each child.

"It is further stipulated and agreed that when his children were first committed to the Louisville and Jefferson County Children's Home, that said Harvey Adamson voluntarily agreed, without court order, to pay to the Home for the upkeep of his children the sum of $4.00 each week for all three of the children.

"It is further stipulated and agreed that during the nine-year period that his children were confined to the Louisville and Jefferson County Children's Home, that said Harvey Adamson was out of work at intervals, and that he was thrown in arrears up to 1933; that thereafter he made fairly

regular payments from 1933 to the period of his death, when he was but $35.00 in arrears, and that in all during the nine-year period his children were confined to the said Louisville and Jefferson County Home he paid a total of $1,487.50 for the said three children, who did not at any time during the said nine-year period live in the home of their father.

"It is further stipulated and agreed that the mother of the three infant children abandoned them in January, 1929, and that they were committed to the Louisville and Jefferson County Children's Home because of the father's inability to support them, and that on July 11th, 1932 the mother of the three infants died suddenly from a heart attack.

"It is further stipulated and agreed that after that Harvey Adamson visited his children on an average of twice a month, and brought them various small gifts, and occasionally a garment, and that about every other month he had them make a trip into the City of Louisville, and paid their expenses, which amounted to 35 cents per round trip for each child. In addition he had an insurance policy on the life of each child, on which he paid a total of $63.00 for all three policies."

The case was referred to J. B. Clark, Referee of the Workmen's Compensation Board, and upon the facts stipulated the Referee found that the infant children of the deceased were dependent on their father for their support and entitled to recover under the terms of the contract sixty-five per cent of their deceased father's average weekly wages of $15.83. The ruling of law was that the children were entitled to recover the sum of $10.28 per week, being sixty-five per cent of the deceased's average weekly earnings not exceeding, however, 335 weeks and not exceeding the maximum sum of $4,000 and entered an award accordingly.

The appellee moved for and was granted a full board review of the opinion and award handed down by the Referee, which was granted, and upon a trial of the case upon the same stipulation of facts the board reversed the finding of the Referee and found as a matter of fact that the infant children of the deceased were only partially dependent on their father for their support and entitled to recover from the defendant $1.37 a week,

or two-fifteenths of $10.28 a week, the sum to which they would be entitled if they were total dependents. The ruling of law by the board was:

"Where children of a deceased employee are living in a public institution to which their parent had contributed to their support, the children are dependent upon the parent in proportion of his contribution to the total cost of their support."

The award entered by the board was for the sum of $1.37 per week as indicated in the finding of facts, and from this order of the board the appellant appealed to the Jefferson circuit court. Upon a review of the case the circuit court affirmed the award of the board.

It appears from the written opinion of the Workmen's Compensation Board that it decided the case principally if not solely upon the case of Veith v. Patterson, 236 Ky. 845, 34 S. W. (2d) 717. The facts in that case are stated in the first paragraph of the opinion thus:

"William Patterson and his employer, John A. Veith, had accepted and were operating under the provisions of the Workmen's Compensation Act. As the result of an accident arising out of and in the course of his employment, Patterson, on November 4, 1927, received injuries which resulted in his death on December 18, 1927. On the divorce of Patterson from his wife, he was awarded the custody of their child, Jennie May Patterson. On May 23, 1927, Jennie May Patterson was committed to the Kentucky State Reform School, an institution maintained by the state, and was an inmate of that institution both at the time her father was injured and at the time of his death. She was paroled on or about November 1, 1928, which was about a year subsequent to the accident. Her father supported her up until the time of her commitment to the reform school, but contributed nothing to her support after that time. At the time of her commitment to the reform school, and at the time of the accident to, and the death of, her father, she was under 16 years of age."

The Workmen's Compensation Board denied compensation but on petition for review the circuit court set aside the order of the board and directed the board

to reopen the case and award Jennie May Patterson compensation on the ground that she was a dependent of William Patterson, her father, within the meaning of the Workmen's Compensation Act. Kentucky Statutes, Section 4880 et seq. On appeal to this court compensation was denied with directions to affirm the award of the Workmen's Compensation Board.

The pertinent part of the opinion in the case, supra, relied on for appellee, is thus quoted in the opinion of the board:

"While we regret this conclusion, it is due entirely to the fact that no provision was made in the statute to meet a case like this, and we cannot reach a different conclusion without doing a violence to the statute, which is as binding on us as on the parties coming within its provisions. This view finds support in those jurisdictions where actual dependency at the time of the accident is a prerequisite to compensation, and it is generally held that claimants who are being cared for in the workhouse, reformatory, or asylum are not dependent within the meaning of the Compensation Acts."

In our view, the Patterson case, supra, is clearly distinguishable from the present case. In the Patterson case the alleged dependent was perforce of law taken from the custody of her father and placed in a penal institution and, as recited in that opinion, after her commitment to the reform school her father contributed nothing to her support but she was supported solely by the penal institution to which she had been committed, presumably as an incorrigible, or for violation of the law. Under such state of facts there was no presumption that the father would support his child, nor was he legally bound to do so. The state assumed that responsibility entirely.

In the present case a different state of facts are presented. The mother of the three unfortunate children involved abandoned them and their father, being unable to care for and support them out of his meager income as a common laborer, the Jefferson county court, by consent of the father so far as the record discloses, committed the children to the Jefferson County Children's Home, a charitable institution. It is stipulated that the father voluntarily agreed, without court order, to pay

the home for the support and maintenance of his children the sum of $4 per week which was all he could pay after paying his own living expenses out of his meager earnings, and during the nine years the children were in the home the father paid the total sum of $1,487.50. It is also stipulated that the father visited his children twice a month and in addition to the $4 per week he paid the home, he bought them various small gifts and occasionally a garment, and occasionally took them to the city of Louisville and paid their expenses. Also, he had an insurance policy on the life of each child on which he paid a total of $63 for the three policies.

The unfortunate circumstances of these children being committed to this charitable institution was brought about by no fault of theirs nor of their father, but resulted from unfortunate circumstances beyond the control of either the children or the father. It is apparent from the stipulated facts that the father was devoted to his children and gave them all the attention and support possible. It appears to us that the facts of this case bring it within the rule announced in the case of Lockhart's Guardian v. Bailey Pond Creek Coal Company, 235 Ky. 278, 30 S. W. (2d) 955, 957, wherein both the facts and principle of law involved are similar to those involved in the present case. We said:

"* * * when a father recognizes his duty to his infant and does for it all that is reasonably required of him, he is actually supporting it within the meaning and purpose of the law."

In United States Coal & Coke Company v. Sutton et al., and Williams v. United States Coal & Coke Company, 268 Ky. 405, 105 S. W. (2d) 173, 176, the facts are in substance these: A divorce was granted to the wife of Sutton and she was awarded the custody of the two children. Later she remarried. Sewell Sutton, the father of the children, wrote a letter to his mother-in-law, Mrs. W. C. Fannon, asking her to look after his two children and said that he would pay her for keeping them. Mrs. Fannon agreed to keep the children and received from Sutton small contributions toward the support of them. Later Mr. Sutton died as a result of an injury received in the course of his employment, and the guardian of the children sought compensation for them on the ground that they were dependent upon their deceased father. The defendant resisted payment of

compensation on the ground that the children were not being actually supported by their father. The Workmen's Compensation Board found that the children were dependent on their father for support and awarded them compensation. On appeal to this court the award was affirmed. It is pointed out in that opinion that the letter Sutton wrote to his mother-in-law was in effect a contract with her whereby he promised to pay her for the support and care of his children. It appears, however, that he had not paid Mrs. Fannon in full for caring for and supporting his children, but she had made no complaint of any default. The decision in that case appears to have been bottomed to some extent upon the contract or promise of Sutton to pay Mrs. Fannon for keeping his children but the contract was not the sole ground or principle of law upon which the case was decided, since it appears that the question of whole support, or partial support, regardless of the alleged contract, played an important part in the determination of the case. The court said:

"The question is dependency, not contribution. We know from their ages these children are not self-supporting; they are totally dependent on some one. The Workmen's Compensation Board has found they were totally dependent on their father. They are declared by Section 4894, Kentucky Statutes, to be wholly dependent on him if they were actually supported by him at the time of the accident. The next question is, to come within the statute, must a child be actually and wholly supported by its father, or can a child be said to be actually supported by its father who makes contributions to its support but not in such amounts as will meet its every need. To say 'actually supported' means actually and wholly supported would be to write into the statute something not written into it by the legislature."

See, also Sandlick **Coal Co. v. Day et al.,** 233 Ky. 632, 26 S. W. (2d) 521.

And the court further said in that opinion:

"Dependency is not determined by the moral or legal obligation of the employee to support the claimant (see Franklin Fluorspar Co. v. Bell, 247 Ky. 507, 57 S. W. (2d) 481); but by the status the

employee had made and his adherence to the relationship thus made and recognized by him, and existing and observed by him at the time he receives his injury. * * *''

We conclude, therefore, that under authority of Section 4894 of our statute as construed in the last two cases cited, supra, and the rule of liberal construction of the Workmen's Compensation Act, the infant children involved in the case at bar were, in contemplation of the statute, wholly dependent on their father for their support.

Wherefore, the judgment is reversed and remanded with directions to set it aside and for proceedings consistent with this opinion.