**CITY OF HARLAN v. FORD et al.**

Court of Appeals of Kentucky.
Nov. 7, 1952.

L. O. Siler, Williamsburg, for appellant.

J. Leonard Davis and George R. Pope, Harlan, James E. Wilson, Jasper, Ala., for appellees.

MOREMEN, Justice.

This is an appeal from a judgment of the Harlan Circuit Court against the city of Harlan affirming an award of the Workmen's Compensation Board, awarding Laura Ford, mother of deceased James E. Ford, and Raymond Ford, son of deceased, as his total dependents, $10 each per week for 400 weeks, and, in addition, $300 to Laura Ford for burial fees.

There are two issues to be determined: (1) Whether the death of James E. Ford arose out of and in the course of his employment with the city of Harlan; (2) Whether the appellees, Laura and Raymond Ford, were totally dependent upon decedent within the meaning of the Workmen's Compensation Act, KRS 342.001 et seq.

On May 8, 1950, the decedent, James E. Ford, and a fellow officer, Dewitt Cottrell, were working the night shift as patrolmen for the city of Harlan. They were wearing badges (the city of Harlan at this time did not furnish uniforms for any of its policemen), and riding in a city police patrol car. About 11:30 that night, they arrested Claude Beach for carrying a concealed deadly weapon, and placed him in jail. Around 2:30 a. m. the two officers, in response to a trouble call, drove into the Georgetown area of the city of Harlan. Upon arriving in the vicinity of the call, they noticed that a street light had been knocked out. It was dark but they saw two men running down the sidewalk. Cottrell, who was driving, parked the car near a garage which apparently belonged to Claude Beach. They got out and were met with a fusillade of shots from an ambush. Ford was knocked down by the first volley and died that night. Cottrell emptied his pistol at Claude Beach and at another man who was in the open. Cottrell received one bullet in the arm and he stated that afterwards when he was calling the station by radio, bullets were coming from everywhere.

The evidence sufficiently establishes that decedent was employed by the city of Harlan. Decedent's mother testified that he had been employed as a policeman by the city about five days before his death and that she received from the city a check in payment of his services. Officer Cottrell testified positively that decedent had been on the police force for three or four nights and that he was working the night shift with him. The evidence supports the board's finding that Ford was an employee of the city. Our position is fortified by an allegation in a petition for review filed in the Harlan Circuit Court which reads: "That prior to May 8, 1950, James E. Ford, and that prior thereto (sic) he and this plaintiff had accepted the provisions of the Workmen's Compensation Board, and each of them had elected to operate thereunder." The petition was verified by Hon. E. L. Howard, Mayor of the city of Harlan.

Appellant next contends that appellee failed to establish that Ford met his death as a result of an accident "which grew out of" and "in the course of" his employment, and relies for support of its argument upon Howard v. Dawkins Log & Mill Co., 284 Ky. 9, 143 S.W.2d 741, 745. In that case the injured employee had been employed as a watchman for the lumber company. In accordance with the custom of the time he had been appointed a deputy sheriff of the county. His principal duty was to protect the company's property and to maintain the peace on the premises. One morning about 5:30, while returning from a place where he had had breakfast, he was shot from ambush without warning. The court held that the claimant, in order to meet the burden of proof, should show some "motive for the perpetration of the assault having some causal connection with the employment," and denied recovery. We do not find that case similar in fact to the instant case. Here, the officers had been employed to protect the lives and property of the citizens of Harlan from harm by members of the criminal element. In the course of good police practice it is necessary to respond to all calls of distress and to investigate all complaints by citizens of noisy, boisterous and unlawful conduct of whatever nature, and when called to a spot of danger, it is an officer's duty to investigate the trouble regardless of whether or not he might be personally harmed. If he refuses to answer such a call he may be summarily dismissed from the force. Here, the officers were discharging their duties as policemen when they responded to such a call. It would be difficult indeed to show that the assailants were actuated by particular motives of personal animosity. In the great majority of cases the officer and his criminal antagonist have never theretofore been face to face. However, in all cases such as are presented here, there is a strong general motive that stimulates the criminal to begin firing—he wants to escape.

We feel sure that the decision would have been different in the Dawkins case if, when he was shot, the deputy sheriff had been on a mission to protect the company's property.

The board and the trial court properly held that Ford met his death as the result of an injury which grew out of, and was received in the course of his employment.

Appellant finally contends that neither appellee, Raymond E. Ford, his son, nor Laura Ford, his mother, was totally dependent upon decedent. The son was born in 1946, the same year in which decedent's wife, Maxine Guthrie Ford, obtained a divorce from him. The divorce judgment embodied an agreement between the parties whereby James E. Ford agreed to pay the sum of $30 per month as maintenance for Raymond E. Ford. Since the divorce Maxine has married Roy Boles, Carbon Hill, Ala., where the child has resided with his mother and stepfather. Mrs. Boles testified that for over a period of a year or more prior to May 8, 1950, the date of his death, James E. Ford had sent to her on an average of $20 per month; in addition, had contributed most of the child's clothes and, at times, toys or other trinkets. It was shown on cross-examination that the stepfather also contributed to the support of this child but the primary obligation for his support was upon decedent, and this obligation had been reduced to a judgment. We think the proof was sufficient to support the award by the board. KRS 342.075; United States Coal & Coke Co. v. Sutton, 268 Ky. 405, 105 S.W.2d 173; Johnson v. Kentucky Color & Chemical Co., 285 Ky. 358, 147 S.W.2d 686. Appellant concedes that Laura Ford, the mother of decedent, was a partial dependent but contends the finding that she was totally dependent is erroneous. The evidence shows that at one time the decedent, with other members of his family, had contributed various amounts which were used for her support, but it was shown that about nine months before his death Ford took up residence with his mother and since that time he alone was the sole means of her support. It is true that during a portion of that period he was not regularly employed but it appears that he obtained money from various odd jobs, borrowed money and, in some way, kept things going.

The testimony of Laura Ford and other witnesses was vigorously attacked by show-

ing that they had made conflicting statements elsewhere, but the introduction of such testimony affects only the probative value of the witnesses' testimony, and, we are of opinion that the broad foundation of the evidence presented was a sufficient basis for the award.

██ We have held it is not necessary in order to show parents are entitled to the benefits of the compensation law that their dependency on the employee be total or that they have no other means of support. Elkhorn & Jellico Coal Co. v. Easterling, 311 Ky. 81, 223 S.W.2d 364. So, certainly here, where the testimony shows that decedent had assumed the full responsibility for the support of his mother, however lean that support may have been, we are not prepared to say that the mother was not totally dependent upon him.

Judgment affirmed.