WILLIAM A. HARBROE'S (dependent's) CASE.

Suffolk.   January 10, 1916. — March 1, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act,* Injury arising out of employment. *Agency,* Scope of employment.

Where before daylight in darkness and fog a night watchman employed by a construction company was standing near the building of his employer with a bridge operator, when they saw a deputy sheriff and his assistant and each pair of men mistook the other pair for yeggmen who just before had robbed a post office near by, and thereupon shots were exchanged, by one of which the watch-

man sustained an injury resulting in his death, it was *held* that, assuming that such injury was received by the watchman "in the course of his employment," it could not be found that the injury was one "arising out of" his employment within the meaning of St. 1911, c. 751, Part II, § 1.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

The facts found by the Industrial Accident Board are stated in the opinion. The decision of the board was as follows: "The board finds, upon all the evidence, that the employee, William A. Harbroe, received a personal injury resulting fatally, on October 9, 1914, which arose out of and in the course of his employment, by reason of the special risk attached to the performance of his duties as a night watchman in the service of the subscriber and that there is due the dependent, Edna May Harbroe, the widow of the employee, a weekly compensation of $9.33 for a period of 428 676/933 weeks from the date of the injury, the total compensation payable by the insurer being $4,000."

In the Superior Court *Jenney*, J., made a decree confirming the decision of the Industrial Accident Board; and the insurer appealed.

*A. L. Richards*, for the insurer.

*C. S. Morrill*, for the dependent widow.

DE COURCY, J. The employee Harbroe was night watchman for the Furst-Clark Construction Company, which was engaged in work on the Cape Cod Canal at Buzzards Bay in Barnstable County. This company had buildings, machinery and other property on both the northerly and southerly side of the canal, and on the easterly and the westerly side of the tracks of the New York, New Haven, and Hartford Railroad Company — which tracks extended in a northerly and southerly direction on a bridge over the canal. At about 3 a.m. on October 9, 1914, one Hart, a deputy sheriff at Buzzards Bay, was notified that "yeggmen" had robbed the safe at the Bourne post office. Later Albert L. Trench, the bridge operator employed by the railroad company, and whose station was near the buildings of the construction company, notified the deputy sheriff that the robbers had just crossed the bridge. Hart and his brother, fully armed, started in pursuit. In the vicinity of the company's office building, they saw, and

were seen by, Trench and Harbroe. Each party, thinking that the others were acting in a suspicious manner, mistook them for the "yeggmen" in the darkness and fog, shots were exchanged, and Harbroe was fatally injured.

1. The insurer contends that the employee was "injured by reason of his serious and wilful misconduct." St. 1911, c. 751, Part II, § 2. According to the findings of the Industrial Accident Board, he was defending himself from attack by men whom he thought to be desperate criminals. There was some evidence that he did not use his revolver until after they had given the command "hands up" and had fired upon him and his companion, Trench. We cannot say, as matter of law, that the facts show such misconduct as would deprive an employee of compensation under the statute. And assuming that § 2 is applicable where the employee is killed (see Part V, § 2, defining "employee"), the same is true as to his dependents. *Nickerson's Case,* 218 Mass. 158. *Johnson* v. *Marshall, Sons & Co. Ltd.* [1906] A. C. 409.

2. The finding of the board, that Harbroe's injury arose in the course of his employment, has some support in the evidence. It occurred during his working hours, and on the path between the office and the machine shop of his employer. The fact that he and Trench had left the office after seeing the supposed "yeggmen" approaching is not conclusive that he had abandoned the care of his employer's property. He may have been on his way to some other part of the plant, where he would be in less apparent danger of bodily harm. At the time of the shooting he was in a place where he was accustomed to go in the performance of his duties. It is merely conjecture to say that he intended subsequently to leave the premises of his employer. *Pigeon's Case,* 216 Mass. 51. See *Ross* v. *John Hancock Mutual Life Ins. Co.* 222 Mass. 560.

3. The doubtful question is whether the injury arose out of the employment. It cannot reasonably be said that the risk of being shot by trespassing lawbreakers is incidental to or has its origin in the nature of a night watchman's ordinary employment. Undoubtedly there are particular instances where the occupation of a night watchman exposes him to risks substantially beyond the ordinary normal ones and where the employment involves and obliges the employee to face such perils. Where the employee's

injury is the result of such special risk incident to the employment and where there is "a causal connection between the conditions under which the work is required to be performed and the resulting injury," the injury "arises out of" the employment within the meaning of the workmen's compensation act. *McNicol's Case,* 215 Mass. 497.

In the application of this principle to cases of assault upon employees in the course of their employment the authorities are not in harmony. Some of these cases are referred to in *McNicol's Case.* In *Challis* v. *London & Southwestern Railway,* [1905] 2 K. B. 154, where an engine driver was struck by a stone thrown wilfully by a boy from an overhead bridge; and in *Nisbet* v. *Rayne & Burn,* [1910] 2 K. B. 689, where a cashier employed regularly to carry wages by train to a colliery was robbed and murdered in the course of the journey, it was held that the injury arose out of the employment. On the other hand, in *Blake* v. *Head,* 106 L. T. 822, 5 B. W. C. C. 303, where a felonious assault was committed by the employer, and in *Mitchinson* v. *Day Brothers,* [1913] 1 K. B. 603, where a carter in charge of his employer's horse was assaulted by a drunken man (both referred to in *McNicol's Case*), it was held that the injury did not arise out of the employment. *Anderson* v. *Balfour,* [1910] 2 Ir. R. 497, was the case of a gamekeeper who was attacked by poachers, but the question was whether the injury resulted from an "accident," not whether it arose out of the employment. The same is true of *Murray* v. *Denholm & Co.* [1911] Sess. Cas. 1087; *S. C.* 5 B. W. C. C. 496, where a workman was attacked by strikers. It was also held that the injury arose out of the employment in *Kelly* v. *Trim Joint District School,* 47 Ir. L. T. 151, affirmed by House of Lords [1914] A. C. 667, where a schoolmaster was assaulted by some of the boys whose enmity he had incurred owing to his efforts to maintain discipline; and in *Weekes* v. *William Stead, Ltd.* 83 L. J. K. B. 1542, where the yard foreman of a firm of furniture movers was fatally assaulted by one of the odd job men who was employed at times by the firm. See also *MacFarlane* v. *Shaw,* (Glasgow) *Ltd.* [1915] W. C. & Ins. Rep. 32. Among the cases *contra,* see *Collins* v. *Collins,* [1907] 2 Ir. R. 104. *Shaw* v. *Wigan Coal & Iron Co.* 3 B. W. C. C. 81. *Clayton* v. *Hardwick Colliery Co. Ltd.* [1914] W. C. & Ins. Rep. 343.

The question we have to determine is whether in the case at bar there was evidence upon which the board could find that Harbroe's death arose out of a special risk incident to the performance of his duties as a night watchman. There was no evidence that this property ever had been injured by wrongdoers, or that from its character or location it was especially exposed to theft or harm at the hands of trespassers. He was not shot while protecting his employer's property from thieves. At the time of this accident the property was in no way threatened, nor did Harbroe suppose it was. And he was not fired upon because he was the watchman in charge. The injury might quite as well have been suffered by any person who happened to be in the locality, whether employed by the construction company or not. Further, although Harbroe mistakenly believed that the two approaching figures were "yeggmen," they were in fact an officer of the law and his assistant, who were in the performance of their duty, seeking to apprehend the men who recently had robbed the post office. The injury which they inflicted was the result of an unfortunate misapprehension on their part (to which Harbroe himself unwittingly contributed), and cannot reasonably be said "to have had its origin in a hazard connected with the employment and to have flowed from that source as a rational consequence." *Reithel's Case*, 222 Mass. 163, 165. As was said in *Madden's Case*, 222 Mass. 487, 495, "The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." We are constrained to say that there was no evidence to support the finding that the employee's injury was one "arising out of" his employment. The decree is reversed and a new decree is to be entered in favor of the insurer.

*So ordered.*