WILLIAM MUNRO *vs.* F. WELLS WILLIAMS ET AL.

Third Judicial District, Bridgeport, October Term, 1919.
WHEELER, BEACH, GAGER, CASE and CURTIS, Js.

An employee whose duties were to look after his employer's grounds, make ordinary repairs to buildings, drive off intruders and trespassers and protect the property generally, was hit in the eye by a shot from one of several air-rifles discharged by a group of mischievous boys then upon the adjoining premises, while the employee was at work laying a brick walk upon his employer's property in front of a building containing windows on all sides and on one side of which were cold-frames constructed largely of glass. He had resumed work upon the walk after having chased the boys away, but they soon returned and renewed the shooting in a spirit of fun and with no intention of hitting the employee or of doing damage to property. In chasing the boys the employee was actuated partly by a desire to protect his own person

and partly the glass of his employer. *Held* that the injury to the employee arose out of his employment within the meaning of that expression in our Workmen's Compensation Act.

Argued November 4th, 1919—decided March 5th, 1920.

APPEAL from the refusal of the Compensation Commissioner of the third district to award compensation to the plaintiff, taken by him to the Superior Court in New Haven County and tried to the court, *Warner, J.;* the court set aside the action of the commissioner and referred the cause back to him for an award in favor of the plaintiff, and from this judgment the defendants appealed. *No error.*

From the finding of the Commissioner the following material facts appeared: The claimant was and is employed by the employer-respondent in the general care of his grounds, among the claimant's duties being to make ordinary repairs to structures, to drive off intruders and trespassers, and to protect the property generally. The claimant had been instructed by the employer-respondent to keep off from the place people who had no lawful occasion to be upon it. Shortly previous to the day of the accident the claimant had warned boys with air-rifles of the danger from the shooting of air-rifles, calling their attention particularly to the fact that tennis players were in the neighborhood, though not upon the property of the employer-respondent. On the day in question the claimant had been engaged in laying a brick walk in front of a building, in which building were windows on all sides, and on the west side of the building were cold-frames constructed largely of glass. While at work on the walk the claimant observed shots from air-rifles falling near him, and called out to a group of boys from which they had come, then standing upon neighboring property, and went in the direction of the boys. The boys ran

away and the claimant resumed his work upon the walk. Thereupon the boys returned to the place from which the former shots had come and began shooting with their air-rifles. The injury to the claimant was caused by a shot from one of the air-rifles which shot hit the claimant in the eye, causing a permanent injury. The boys were actuated only by mischief. Their intention was not to hit the claimant, but to fire only in his general direction, and they had no intention of doing damage to property. Their object was to get the claimant to run after them in order that they might enjoy running away from him. In running after the boys the claimant was actuated partly by a desire to protect his person and partly by a desire to protect the glass.

*William B. Ely*, for the appellants (defendants).

*Charles E. Clark*, for the appellee (plaintiff).

GAGER, J. The specific duties of the claimant, among others, were to drive trespassers and intruders off respondent's property, and to protect the property generally. Mischievous boys, having no intention of damaging respondent's property, and being on adjoining property, shot air-rifles upon respondent's property, and the shots fell about the claimant. Partly to protect his person and partly to protect the glass in respondent's building near which the claimant was working and which he apprehended might be injured, the claimant chased the boys away. Were the boys, when so shooting, trespassers or intruders or endangering respondent's property? Though standing on adjoining land the boys, in shooting on to the respondent's land, were trespassers, and the fair import of the finding is that claimant was justified in regarding the shooting as dangerous to respondent's glass. The shooting was certainly dangerous to persons as the result showed.

This is a case of entry by the thing controlled. 38 Cyc. 996; *Whittaker* v. *Stangvick*, 100 Minn. 386, 111 N. W. 295, 10 L. R. A. (N. S.) 921; *McGhee* v. *Norfolk & Southern Ry. Co.*, 147 N. Car. 142, 60 S. E. 912, 24 L. R. A. (N. S.) 119. In chasing the boys away, claimant was trying to put a stop to these trespasses and the danger to property consequent upon the shooting, and was acting strictly within the line of his employment. Had he then been hit while chasing the boys away, that hitting unquestionably would have arisen out of his employment. That the shooting was playful and not intended to do damage, can make no difference. In carrying out the employer's orders claimant was not obliged first to ascertain whether the shooting was malicious or in fun. The trespass and the danger to the glass were the same in either case.

But the respondents urge that, granting all this, the accident did not occur while claimant was driving the boys away, that he had returned to the work he was doing before he drove them away, and was not actively protecting the property at the time he was injured. The finding shows that, having driven the boys away, he returned to his work and the boys also returned to their sport of shooting in his direction to induce him to chase them again. Whatever their intentions, they in fact renewed their trespassing and renewed the danger to person and property. The finding is not explicit, but apparently before claimant had again begun to drive them away he was hit in the eye by one of the shots and the sight was permanently injured. He was hit as a result of the very trespassing and danger to property he was there to prevent. He had just performed his duties in that line, he was ready to repeat, if necessary, what he had before done, he was there to perform these very duties and was engaged in the performance of such duties, although the hit

was made before he had a chance to actually proceed the second time to drive the boys away. The whole affair was substantially a continuous performance. It can hardly be claimed that had the hit occurred when he was returning from driving them away the first time, he could not recover because he was coming back instead of going out. No more can it be claimed that upon the immediate repetition of the acts for which he had just driven the boys away, he could not recover because his injury occurred before he could get under way to pursue them. To use the language of the trial court, the claimant, on resumption of his former work laying the walk, "was still acting in the capacity of guardian against intruders and trespassers and as general protector of the property, differing [in that respect] from an ordinary employee engaged simply to lay brick."

This is not the case so frequently discussed in the reports of the sportive or the quarrelsome act of a fellow-employee, or what is called "larking " between fellow-employees, but of trespasses in fact which the claimant was employed to prevent, and none the less trespass and dangerous because done mischievously and not maliciously. Nor is it a case of mere mischievousness of the boys and personal resentment of the claimant unconnected with the sphere of his duty. The claimant was not merely the layer of a walk, but in addition he was a protector of property, and the injury was incidental to his employment because it arose out of the specific duty as to trespasses imposed by the employment upon him. In its most literal sense the injury had its origin in a risk imposed by the employment. *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 96 Atl. 368. See, also, L. R. A. 1918E, p. 504, note. In *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 103 Atl. 115, the case was

that of a personal dispute and quarrel between two employees, and its reasoning furnishes no aid to the respondent. The respondent appears to rely upon *Reithel's Case,* 222 Mass. 163, 109 N. E. 951. There a mill superintendent had been instructed by the manager that if a certain disorderly person came into the mill the superintendent was to order him out and, if he did not go, to send for the police. The disorderly person came into the mill, the superintendent motioned to him to go out, and the disorderly person shot the superintendent and caused his death. It was held that the death arose out of the employment. In that case it was said (p. 165): "This injury was one to which the employee was exposed by reason of his employment, and, but for the special duty imposed on him respecting Bombard [the disorderly person], he would not have been in the way of receiving it. The causative danger was peculiar to his work. It was incidental to the character of the employment and not independent of the relation of master and servant. Although unforeseen and the consequence of what on this record appears to have been a crime of the highest magnitude, yet now, after the event, it appears to have had its origin in a hazard connected with the employment and to have flowed from that source as a rational consequence." The difference between *Reithel's Case* and the present, is that there the duty was with respect to a particular trespasser, while here it was toward trespassers generally, and here the injury was even more closely connected with the trespass, for it was the result of the trespass itself which caused the injury and not some collateral malicious act of the trespasser. *Harbroe's Case,* 223 Mass. 139, 111 N. E. 709, also cited by respondent, was where in the dark a night watchman and his companion saw a deputy-sheriff and his assistant, and

each party mistook the other party for "yeggmen " who had just robbed a post office near by. Shots were exchanged and the watchman was killed. In holding that the killing did not arise out of the employment, the court there said (p. 143): "He was not shot while protecting his employer's property from thieves. At the time of this accident the property was in no way threatened, nor did Harbroe suppose it was. And he was not fired upon because he was the watchman in charge. The injury might quite as well have been suffered by any person who happened to be in the locality, whether employed by the construction company or not. Further, although Harbroe mistakenly believed that the two approaching figures were 'yeggmen,' they were in fact an officer of the law and his assistant, who were in the performance of their duty, seeking to apprehend the men who recently had robbed the post office. The injury which they inflicted was the result of an unfortunate misapprehension on their part (to which Harbroe himself unwittingly contributed), and cannot reasonably be said 'to have had its origin in a hazard connected with the employment and to have flowed from that source as a rational consequence.' " The reasoning in that case does not at all fit the facts of the present case, for it counts on exactly the absence of a relationship and a duty·which are quite prominently present in this case. We have examined the other cases cited by the respondent and do not think they militate against the conclusion we have reached. We therefore hold that claimant's injury arose out of his employment within the meaning of the Compensation Act, and no question was raised but that it happened in the course of his employment.

There is no error.

In this opinion the other judges concurred.