[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action concerns a dispute over a metal fence erected by the defendants, later modified by them but yet in dispute. The lands of the plaintiffs and defendants adjoin each other in part.
The action was brought in five counts. At the beginning of trial, plaintiffs orally on record withdrew count three (excessive lighting), count four (zoning violation) and count five (unfair trade practices).
The case was tried on count one (trespass) and count two (violation of C.G.S. Section 47-47).
 I.
The plaintiffs, husband and wife, own land improved with wooden house which they used as a home, known as 13 University Place in the Town of New Haven. They took title to it in 1979 and lived there until October 1989 when they moved away but continued to retain ownership of it. While living there, they used the property as a home. The backyard had trees, shrubbery and bushes. They used it as a garden for growing flowers and vegetables and for entertainment and recreational purposes.
For present purposes the property at 13 University Place is considered bounded upon the south side by University Place, a public highway, 65 feet; upon the east by adjoining land 82.16 feet; upon the west by adjoining land 83.51 feet, and upon the north side by land occupied by the defendants, 68 feet. (Exhibits A and B). CT Page 4489
The north side of plaintiffs' property has a concrete wall for its full length of 68 feet. The wall is five and one-half to six feet high, and is twelve inches thick. Defendants concede the wall is located wholly upon land of the plaintiffs. This designates land north of the cement wall of plaintiffs' property as land occupied by defendants.
The fence in controversy pertains to this wall on the north side of plaintiffs' property and not to the fences noted elsewhere in Exhibit B. Plaintiff's wall is further shown in Exhibits C, D, E, F, and G.
The property of plaintiffs is outlined in yellow on Exhibit A. The southern boundary of the property occupied by defendants is outlined in pink on it and indicates where the north side of plaintiffs' property and wall adjoins the property occupied by defendants.
Photo-exhibits C, D, E, F and G were taken August 26, 1990 from the plaintiffs' grounds with camera pointed substantially northerly.
Photo-exhibits H, I and J were taken August 26, 1990 from the defendants side with camera pointed substantially southerly.
Defendants use the property occupied by them for the sale and purchase of motor vehicles and automobile dealing.
Late in February 1988 plaintiffs were away for a while and upon returning home discovered that a wire fence had been constructed and fastened to the north side of plaintiffs' cement wall.
The fence consisted of a continuous coil of stranded wire stretching in an easterly-westerly direction, having small razor blades in its strands. The coil was held up by horizontal wire strands running through the coil for the full length of 68 feet of plaintiffs' north cement wall (See Exh. L and M). The wire fence was fastened to the wall by metal brackets.
By letter dated February 23, 1988 plaintiff, Philetlus H. Holt, requested the removal of the fence. Further requests were made at that time as to excessive lighting, not now in issue.
In the summer of 1989, defendants made a change in the wire fence. In the main the change consisted in the manner in which the wire fence was fastened. Whereas the wire coil and strands supporting it had at first been fastened physically to the plaintiffs cement wall, these were unfastened and the attachment transferred to five posts which had been erected on the defendants CT Page 4490 grounds such that the wire fence and posts came up to two inches from the north side of plaintiffs' cement wall for the full width of 68 feet. The new arrangement did not eliminate a trespass. The thickness of the wall is twelve inches. The new arrangement caused the wire loops of the defendants' fence to extend southerly over the boundary line such as to encroach from three to five inches over and upon the width and top of the wall and in places to press down upon the wall. This construction extended along the full length of 68 feet of the northerly side of plaintiffs land.
Defendants agree the northerly cement wall is all located on plaintiffs' land. It is clear that the northerly face of the cement wall designates the boundary line of the adjoining properties of the parties.
One of the posts of the new arrangement of 1989 is shown in Exhibit J. It shows a metal arm fastened to the top of the post, the metal arm inclined inward toward the defendants' side. The new arrangement of defendants utilized three (3) straight horizontal strands of wire. The top wire also runs through the continuous coil for the full length of 68 feet. It supports the continuous loops for the 68 foot length.
This continuous coil or these repeating loops, are mainly on the defendants' side, but the plane of the loops are in effect perpendicular to the length of the wall such that part of the loops encroach over the top of the wall up about five inches of the twelve inch thickness of the wall. The loops are in effect located higher than the top of the wall, touching and resting upon it in some places, and just being vertically above it in other places. To the extent of this overlap, defendants are dispossessing plaintiffs from their possession and from their rights of possession and committing a trespass to plaintiffs' property under the principles of trespass quare clausum fregit.
II-A
Trespass has an ancient origin. In general an unlawful intrusion that interferes with someone else's person or property is called trespass.
It arose under the common law of England as early as the thirteenth century when a wrong doer who broke the King's peace was summoned to respond in a civil proceeding for the harm he had done. As trespass developed into a means of compelling a defendant to compensate a plaintiff for injuring a persons property interests it took two forms: an action for trespass on real property and one for injury to personal property. The classical case of trespass to land was called trespass quare clausum fregit, that is, breaking the "close". A plaintiff could CT Page 4491 recover damages from a defendant for forcible interference with the plaintiff's possession of his or her land by the wrongful entry into his land, vi et armis. Even the slightest entry into the land without the plaintiff's permission entitled the plaintiff to damages in a nominal sum. The action of trespass to land is used most commonly to describe the intentional and wrongful invasion of another's real property. (See The Guide to American Law, Vol. 10, pg. 147 et seq.).
As the action evolved it appears that owners of land are expected to use their property reasonably without unduly interfering with the rights of the owners of contiguous land. Anything that a person does that appropriates adjoining land or substantially deprives an adjoining owner of the reasonable enjoyment of his or her property is an unlawful use of one's property. See The Guide to American Law, Vol. 1, p. 65.
At common law, every man's land was deemed to be enclosed, so that every unwarrantable entry on such land necessarily carried with it some damage for which the trespasser was liable. Any entry on land which was in the peaceable possession of another is deemed a trespass, without regard to the amount of force used, and neither the force of the instrumentality, by which the close is broken, nor the extent of the damages is material. 75 Am. Jur.2d, Trespass, Sec. 10.
II-B
The plaintiffs were in peaceable possession of their property and defendants had no possession of any part of it, nor any title to any part of it when they constructed the first fence in 1988 and when they erected the fence in 1989. See Hubbell v. Peck,15 Conn. 133.
The fact that the 1989 fencing of defendants began at a height near the top of plaintiffs' cement wall gains them nothing. It constitutes an unlawful entry nevertheless.
Entry upon the land of another constituting a trespass is not confined to an intrusion thereof upon the surface of the ground. Based upon the traditional theory that land has an indefinite extent, upward as well as downward, the orthodox common law rule has been that any intrusion into the air space above the land of another amounts to a trespass. 75 Am. Jur.2d, Trespass, Sec. 13.
In accordance with this view, shooting across the land of another in Connecticut has been held to be a trespass. Munro v. Williamson, 94 Conn. 377: 109 A. 129; 13 A.L.R. 508.
In conclusion, it is found that defendants have trespassed CT Page 4492 upon the property of the plaintiffs in more than one respect:
1. By unlawfully and without permission or authority entering upon it in 1988 by fastening the fence or parts of it to the cement wall of the plaintiffs.
2. In 1989 and to date by dispossessing the plaintiffs from the possession of the cement wall to the extent that the wire loops, posts wire strands and posts or parts thereof have and do overlap or overhang areas south of the northerly face of the northerly cement wall of plaintiffs for its full length of 68 feet.
3. By appropriating part possession of plaintiffs' cement wall.
4. By defendants never procuring the permission of plaintiffs to enter their property.
5. By constructing the fence and/or wire loops, wire strands and metal posts in reference to the plaintiffs' property without obtaining the permission or consent of plaintiffs, which permission the plaintiffs would not have granted if asked.
6. No part of defendants fence, when projected downward by suspended plumb-line or equivalent, should be or fall to the south of said northerly face of plaintiffs northerly cement wall boundary.
7. It is to be noted that whether there has been a trespass does not depend upon the kind of wire that has been used by defendants.
II-C
With reference to damages the plaintiffs are entitled to nominal damages of $25. for the technical trespass committed by the defendants and entitled to special damages for the injuries suffered by plaintiffs in consequence of the trespasses and limitation of use of their property.
Plaintiffs had been using with pleasure for many years the yard of their property as a garden for growing vegetables, flowers and for entertainment purposes. In addition they took great pleasure in having their meals out in the open. The sight of the barbed-razor wire structure atop and above and overlapping the cement wall deprived the plaintiffs of the enjoyment of all that. In addition plaintiffs suffered from anxiety in the loss of the full possession of the cement wall in the continuing wrongful trespass by defendants. Plaintiffs further suffered from the feeling of aggravation in having defendants take control of part CT Page 4493 of plaintiffs' cement wall by the unauthorized entry by the defendants into plaintiffs' property. Plaintiffs' yard became less adaptable for recreational and entertainment purposes. To the plaintiffs the defendants' wire structure changed what they had considered an enjoyable home and nice garden into the semblance of a "prison" ultimately ending in the decision to move away, although retaining ownership of the property.
Plaintiffs should be compensated for this loss of pleasure and enjoyment and loss of use of property together with their suffering discomfort and aggravation.
Damages need not be fixed with certainty. Mathematical precision is not required. Johnson v. Flamice, 169 Conn. 401.
In torts, damages have not been limited to tangible injuries. "Damages are also designed to compensate for intangible injuries such as mental anguish and embarassment. . . ." Wochek v. Foley,193 Conn. 582, 588.
"Many of the factors upon which our rule for the assessment of damages rest are, at best, rather indefinite and speculative in nature. id., 588.
In Patalano v. Chabot, 139 Conn. 356 the defendant's erection of a wall was held to be an injury to the plaintiff's easement since it interfered with his enjoyment of it and some damage should have been granted him. The trial court had found no actual damages. It was held that nominal damages of $25.00 should be granted.
In Hubbell v. Peck, 15 Conn. 133, it was held that a landowner may not plant the corner post of his front fence so that half of it is on his neighbor's land and if he does so it is considered a trespass.
In the instant case defendants trespassed upon the plaintiffs' property in February 1988 and have continued it ever since notwithstanding that they modified the fence in 1989 although continued the trespass in another form ever since. They have never had the permission of plaintiffs to enter and use the property of plaintiffs, and have continued an unlawful entry to date of trial over objection of plaintiffs with actual damages to plaintiffs as heretofore indicated and continuing into the future.
II-D
With reference to the civil liability of defendants for the construction and use of the razor barbed wire fencing in 1988 and 1989, the defendant corporation, Crest Lincoln Mercury, Inc., CT Page 4494 acknowledges having erected and paid for the same.
It is further found that the motor vehicle business was conducted by the defendant corporation and partnership including the two defendant individuals Sidney White, who testified, and Richard H. Fitzpatrick, who did not testify, and that Sidney White was an agent of the corporation and partnership, and hence that all three defendants, viz., the corporation and said White and said Fitzpatrick are subject to civil liability for the erection and use of the razor-barbed wire fencing in 1988 and 1989 to date.
 III.
Plaintiffs are entitled to payment of nominal damages of $25. for the technical trespass of defendants, and payment of special damages of $2000. for the trespass to date of judgment payable to plaintiffs by defendants.
In addition thereto, defendants are ordered to discontinue the continuing trespass within 90 days from date hereof, subject to contempt upon default thereof.
 IV.
In the second count plaintiffs allege a violation of C.G.S. Section 47-47 by the defendants by using barbed wire in erecting their fence. Defendants deny it is barbed wire and urge it is not a divisional fence.
It will be recalled that earlier in this opinion, it was found that there is a cement wall on the north side of the plaintiffs' property; that this is located all on plaintiffs' property and so agreed to by defendants; that the wall extends easterly and westerly for its full length of 68 feet, and that the northerly face of the cement wall, that is the side facing the defendants, marks the adjoining common boundary line between the properties of the plaintiffs and defendants.
Connecticut General Statutes, Section 47-47 provides as follows so far as pertinent:
 Sec. 47-47. Barbed wire between adjoining premises or enclosing grounds of public buildings. No person shall use barbed wire in the construction of fences, or have barbed wire upon existing fences, between his own premises and those of an adjoining proprietor, within twenty-five rods of any house or barn belonging to such proprietor, unless either premises are used in connection with raising CT Page 4495 livestock, without first obtaining his written consent. . . . Any person who violates any provision of this section shall be fined not more than one hundred dollars.
There is no dispute but that the defendants' wire fence is within 25 rods of the plaintiffs' house and that neither the plaintiffs nor any defendant is engaged, nor their premises used, for live stock purposes.
Defendants admit that they did not obtain or have any consent of plaintiffs before constructing and fastening the wire fence on plaintiffs' wall in 1988.
Also it is found that defendants did not obtain nor have the consent of plaintiffs when they constructed the wire fence change in 1989.
The statute restricts the use of "barbed" wire. The wire that has been and is used here is called "razor" wire and sometimes "concertina" wire. Defendants deny it is barbed wire.
A question arises whether the "razor" blade wire is barbed wire within the intendment of the statute.
Websters New International Dictionary defines barbed wire as a wire or strand of twisted wires armed with barbs, or sharp points.
The razor blade wire used by defendants is stranded. It has small razor blades at short spaces fastened to it. It can and will catch clothing and flesh upon contact and was put in place by the defendants for the purpose of preventing trespasses and for protecting the defendants' possession of their premises. Protection of one's property is recognized as a well established purpose of a fence.
The fact that traditional barbed wire may have a barb to make extraction more difficult than razor blade wire does not distinguish it from the intendment of the statute. The sharp razor blades on the razor blade wire are capable of sharp deep cuts to whomever may come into contact with them. The razor blade wire presents a peril similar to and no less dangerous than the peril the statute intended to remedy.
Clearly the intent of the statute is to prevent harm to those who may come into contact with barbed wire. An additional purpose it appears to have is to induce adjoining land owners to discuss possible solutions of boundary disputes, if possible, and lesson litigation. CT Page 4496
The corporate unit of the defendants acknowledges having paid for the razor wire structure, labor and materials. Its purpose was to safeguard their possession of the land occupied by them. The wire fence extends to the south so as to overlap the common boundary line, being the northerly face of the north cement wall of plaintiffs.
Defendants claim that the statute does not apply here because it is not used to mark a boundary. This claim is not sustained.
The statute does not restrict its application so narrowly. It relates to the use of barbed wire "between adjoining premises", which broadens its scope and applicability within an area 25 rods of any house, as here.
The razor type wire used by the defendants in 1988 and 1989 is of the same type and used for the same purpose intended and prohibited by the statute, C.G.S. Section 47-47.
There is no question but that when defendants erected their barbed wire fence in 1988 and 1989 they did not have the consent of plaintiffs to do so, either oral or written.
The requirement for such a consent under the statute, Section47-47, is plain and clear and represents a requirement imposed by the public policy of the legislature, declared in passing the statute. The consent is to be obtained in writing before using the barbed wire. Neither condition was complied with before defendants erected their barbed-razor blade wire fence in 1988 and 1989.
On the part of the defendants their acts in 1988 and 1989 must be considered as having been done with their knowledge of the law, otherwise knowledge of the law could be evaded with facility. Hebb, et al. v. Zoning Board of Appeals of the Town of West Haven,150 Conn. 539, 542.
On the part of the court a change in public policy is determined by the legislature; it is not a judicial function. Herald Publishing Company v. Bill, 142 Conn. 53, 63. It is primarily for the legislature, which is the arbiter of public policy, to determine what that policy shall be. A constitutional statute can never by judicial decree, be declared to be against public policy. General Motors Corp. v. Mulquin, 134 Conn. 118.
On the part of the defendants, whatever actual ignorance may have been theirs of statute, Section 47-47, in relation to their barbed wire fencing in 1988, there is ample evidence of their actual knowledge of it in regard to their barbed wiring in 1989 CT Page 4497 and of their unwillingness to remove the razor blade wire of 1989, even in the face of their trespassing at that time.
For the court to eliminate the need of the consent of plaintiffs for defendants to use barbed wire fencing in the instant case would be for the court to make a change in the legislature's declared public policy, a change not permissible within the judicial function of the court here, and be an abuse of discretion on its part if it did so. Herald Publishing Co. v. Bill, 142 Conn. 53, 63.
Moreover, it seems clear that for the defendants not to be compelled to remove the present barbed razor blade wire fencing would allow them to evade the law and to obtain by violating the statute. Section 47-47, what the statute prohibits and was intended to prevent in the first place. Aside from this it would be causing the court to contravene a legislative public policy it is the court's duty to uphold whenever possible as here.
The statute appears to create a legal relation in the nature of an immunity on the land of plaintiffs from the use of barbed wire fencing unless with plaintiffs' consent and hence plaintiffs, as owners of their property, have a rightful interest in enforcing the statute.
In Manley v. Pfeiffer, 176 Conn. 540 it appears there was no showing of irreparable harm as being necessary in support of a mandatory injunction in support of a restrictive covenant requiring a signature.
Mandatory injunction is recognized as an extraordinary remedy, and that it should be granted only under compelling circumstances. Herbert v. Smythe, 155 Conn. 78.
Such relief is necessary in the instant case.
1. To refuse mandatory relief gives the defendants rights which Section 47-47 of the statutes is intending to restrict the defendants from having, the defendants being better off disobeying the statute than by obeying, because plaintiffs would not have given their consent.
2. The breach of the statute is a continuing one.
3. Plaintiffs should be restored to status quo. Defendants had no rights of any kind in property of the plaintiffs before 1988. Defendants violated the statute in 1988 and 1989. They are not entitled to collateral support because any difficulties defendants may consider they have are self-created and not of natural source. Defendants have had an opportunity, to remove the CT Page 4498 barbed razor blade wire and have rejected it.
4. The court is upholding the intent and purpose of the statute instead of helping to render it into a sham.
The civil liability of all three defendants was discussed in an earlier portion of this memorandum and equally applicable here.
Defendants are in violation of Section 47-47 of the Connecticut Statutes in using barbed-razor blade wire without consent of plaintiffs, written or otherwise, and in a trespassing manner, which violation requires termination.
Accordingly, defendants are enjoined from using barbed-razor blade wire along the northerly cement wall of plaintiffs' property, said order to be effective from date hereof and apply to barbed-razor blade wire whether located on defendants' property, or on plaintiffs' property, whether touching plaintiffs' wall, overlapping it, or suspended vertically above any part of plaintiffs' wall or property.
Compliance with the foregoing is suspended for a period of ninety days (90) from date hereof, upon default defendants to be subject to contempt action.
Judgment may enter accordingly.
PHILIP R. PASTORE State Trial Referee